## NORTHERN PAC. R. CO. v. CHARLESS.

*(Circuit Court of Appeals, Ninth Circuit. August 5, 1892.)*

1. MASTER AND SERVANT—NEGLIGENCE—INJURY TO BRAKEMAN—EVIDENCE.

A railroad section hand was on a hand car with other employes, under the control and superintendence of a section boss, and was going at the rate of 10 miles an hour. The brake appliances on the car had been supplied by the section boss, and were defective. Extra trains were being run over that section, without notice to the hands. A rapidly moving freight train approached through a cut and around a curve, giving no warning or signals. The brake on the hand car was applied without effect, and plaintiff, believing himself in imminent peril, jumped, falling between the rails, and the hand car ran over him. *Held* sufficient to warrant the jury in holding the company liable.

2. SAME—DEFECTIVE APPLIANCES—DUTY OF RAILROAD COMPANY.

The duty of a railroad company to furnish its employes with safe and reliable machinery and appliances adequate to the services in which they are engaged cannot be delegated to another servant so as to exempt itself from liability for injuries caused by its omission. Nor will the negligence of a fellow servant excuse the company from liability to a coservant for an injury which would not have happened had the proper machinery been furnished.

3. SAME.

The employes on the hand car had a right to expect that those in charge of the freight train would give the usual warning in approaching places of danger; and the negligence of the officer in charge of the train in this respect was not one of the usual and ordinary risks assumed by the plaintiff as incident to his employment.

4. TRIAL—EXAMINING WITNESS—DISCRETION OF COURT.

The mode of examining a witness is within the discretion of the court, and it is not error, therefore, to allow a witness to give his testimony in a narrative form, and if he states matters irrelevant or incompetent it is the duty of the party objecting to arrest the narrative, and move to have such testimony stricken out.

5. PRACTICE—NONSUIT—DIRECTING VERDICT—POWER OF FEDERAL COURTS.

The federal courts have no power to order a compulsory nonsuit at the close of plaintiff's evidence, or to direct a verdict for defendant before the latter has rested his case.

6. BILL OF EXCEPTIONS—SUFFICIENCY—OBJECTIONS TO EVIDENCE.

A bill of exceptions which, in respect to certain evidence admitted at the trial, contains merely the formal record, "Objection taken; overruled; exceptions allowed,"—is too general to present any question for review, as the ground of objection should be pointed out.

7. APPEAL—REVIEW—EXCESSIVE VERDICT—NEW TRIAL.

The correction of an excessive verdict is a question for the trial court on a motion for a new trial, the granting or refusing of which will not be reviewed by the federal appellate courts.

Error to the Circuit Court of the United States for the District of Washington.

At Law. Action by Hugh Charless against the Northern Pacific Railroad Company for damages for personal injuries. Judgment for plaintiff in the sum of $18,250. Affirmed.

*John H. Mitchell, Jr.,* for plaintiff in error.

*A. K. McBroom* and *Prather & Danson,* for defendant in error.

Before DEADY, HAWLEY, and MORROW, District Judges.

MORROW, District Judge. This action was brought by Hugh Charless, defendant in error, the plaintiff below, to recover the sum of $25,000 for damages for personal injuries, alleged to have been received by him while in the employ of the Northern Pacific Railroad Company, defendant in error, as a section hand engaged at work on the line of the road at a

point near Cheney, then in the territory, now in the state, of Washington. The case was tried before a jury, and the plaintiff had a verdict and judgment for $18,250 and costs. A motion for a new trial was made and denied, and thereupon the company sued out this writ of error. The complaint originally stated two causes of action, the first of which consisted in a statement of permanent injuries alleged to have been received by plaintiff while assisting in the course of his employment as a section hand in operating a defective hand car upon one of the sections of the company's line of railroad. The second cause of action set forth in the complaint consisted of allegations to the effect that at the time of the injury there were known to the medical and surgical professions certain medical, surgical, and remedial appliances, by the proper use of which the plaintiff could have been almost, if not entirely, healed and cured of his injuries; that the company failed, neglected, and refused to use or have or cause to be used such appliances and medicines for the healing of plaintiff, whereby plaintiff had been rendered a cripple for the remainder of his life, unable to work, or move his lower limbs or the lower part of his body. The defendant demurred to the first cause of action, and moved to strike out the second. The demurrer was overruled, and the motion to strike out granted. The action of the court in overruling the demurrer to the first cause of action is claimed as error, on the ground that the complaint, as it was allowed to stand for trial, did not state facts sufficient to constitute a cause of action.

The material allegations of the complaint relating to the first cause of action are that in the operation of defendant's railroad it was necessary at all times to keep in employment and service of defendant a number of laborers for the maintenance of defendant's track and roadbed, and it became and was defendant's duty, in the employment of said laborers in said service, to furnish them with competent and efficient means and appliances for the proper discharge of their duties in said service, and to furnish them with necessary information as to the passing of trains on defendant's road to protect themselves from injury by such trains while engaged in said service. That plaintiff was on the 28th day of August, 1886, one of defendant's servants and employes whose duty it was to maintain a certain section of defendant's track and roadbed, under the charge, control, and superintendency of one William Kirk, who was the section boss of the section running west from Cheney, and as such section boss the agent of the defendant in maintaining the track and roadbed, and had the superintendency, direction, and control of the work and the means and appliances therefor. That at said date defendant had in its employ at Cheney a telegraph operator, whose duty it was to know the time of passing trains over defendant's road in the vicinity of Cheney, and the times of their arrival and departure therefrom, and to inform defendant's servants and employes, whose safety and welfare might be endangered thereby, of the times of the running of such trains. That in the carrying on of said work of maintaining said track and roadbed it became and was necessary for said servants and employes to use a certain hand car under the direction and control of the section boss.

That this hand car was sufficient for its ordinary uses, but in case of imminent danger from collision it was defective in not having a sufficient brake; which, instead of brake blocks to rub and stop the wheels, was only a short piece of timber fastened to said car at one end, and made to rub upon one of the wheels by pressing thereon with the foot. That the section boss and road master knew of this defect, but told plaintiff that the brake was sufficient for the purposes of its use, and plaintiff did not know different until the happening of the accident in which he was injured. That on the said 28th day of August, 1886, while in the service and employment of the defendant as aforesaid, and during working hours, plaintiff, together with other like servants and employes of defendant, under the direction and superintendency of the section boss, and with the knowledge of said telegraph operator, left Cheney on said hand car, going west, being ignorant of any approaching train on the road from the west, and of any danger to his person on account of the running of any train in that vicinity. That when about two miles west from Cheney, near a deep cut and curve in the road, sufficient to obscure an approaching train, while plaintiff was standing on the front end of the hand car, working at the lever propelling the same, with his back towards the direction in which they were going, the section boss standing on the rear end of the hand car looking in the direction they were going, having full charge, control, and direction of the hand car, which was then running at the rate of about 10 miles an hour, the section boss for the first time informed plaintiff that a freight train traveling east was about due at that place. That plaintiff knew that said hand car was then not far from said cut and curve in said road, immediately became apprehensive for his personal safety. That immediately upon informing plaintiff that said train was then about due at said place said section boss exclaimed, "There she comes now; put on the brake!" That thereupon one of the employes nearest the brake put it on, and tried to stop the car, but failed to do so, or to diminish its speed sufficiently, as it appeared to plaintiff, to prevent a collision with the approaching train, whereupon plaintiff turned to see how near the train was, and what the chances of escape were. That he then saw the train but a short distance from them, and approaching very rapidly, without slackening its speed, and it appeared to plaintiff that a collision with the train was inevitable, and that his life would be lost thereby, unless he did something upon that instant to save his life. That at that time there were tools and different kinds of repair materials on the hand car, so arranged along its sides that it appeared to plaintiff that it would be impossible for him to reach either side of the car to jump therefrom to the side of the track, but it did appear to him that he could jump from the front end to the side of the road, and avoid injury, and with this belief he did jump, with the intention of saving his life. That when he jumped from the car, instead of alighting upon his feet on the side of the road, as he expected, he fell on the road between the rails, and before he could recover himself the hand car was about to run over him, whereupon he put up his foot against the approaching

hand car to stop it, and prevent it running over him, but the car was coming towards him with such velocity that he could not stop it, and it ran over and upon him in such a way as to break and dislocate one, of the *vertebræ* near the middle of his spinal column, and to cause him other great and permanent injuries about his back, chest, and legs. That during all the time the engineer and conductor of the freight train knew of the danger in which plaintiff was then placed, and of a collision with the hand car, and of the probability thereby of injuring and killing plaintiff; yet the engineer and conductor of the freight train negligently and recklessly failed and refused to slacken the speed of the train, and continued to run it at a great speed, to wit, of 25 miles an hour, thereby causing plaintiff great fear of immediate death by said train running over him and causing him to make the efforts he did to save his life. That the telegraph operator at Cheney knew that plaintiff left Cheney on said hand car, and that a freight train was about due at that place, going east, and that the hand car, going west on said section at that time, would be in great danger of a collision with the freight train, and the plaintiff would be in great danger of personal injury and loss of life thereby. That the telegraph operator negligently and recklessly failed, neglected, and refused to inform plaintiff thereof, whereby he was placed in the position of great imminent peril and danger, which, without his fault, resulted in the injury to him as stated. That defendant negligently and knowingly permitted and caused plaintiff to use in its service said car having a defective brake, whereby plaintiff was made and caused to rely on the sufficiency of said brake until he had to jump from the car, causing the injuries stated.

It is urged against the sufficiency of this complaint that it contains no allegation charging negligence upon the company, or upon any one for whose acts the company was responsible. The statement of the case made by the complaint is subject to some criticism. It is not in the most approved legal form, a plain and concise statement of facts constituting the cause of action, but we are of the opinion that, taking all the allegations of the complaint together, they in effect charge—*First*, that the defendant was negligent in not providing plaintiff and his coemployes with a suitably equipped hand car for the work in which they were engaged at the time of the accident; *second*, that under the direction of the section boss the hand car was being run at the rate of about 10 miles an hour when the approaching freight train was discovered immediately in front; *third*, that the telegraph operator at Cheney negligently failed to notify plaintiff and his coemployes that in going west on the section at that time they would meet a freight train going east; *fourth*, that the conductor and engineer of the freight train were negligent in running their train at great speed, and in not slackening the speed of the train when the danger of collision with the hand car became imminent by its approach,—and that the failure of the defendant through its agents to use ordinary care in these particulars was the proximate cause of the injury to the plaintiff. The question is as to whether any one or all of these allegations state a cause of action against the de-

fendant, and its determination involves a consideration of the general rule exempting the common master from liability to one servant for injuries caused by the negligence of a fellow servant in the same employment. To this rule there are several important exceptions. In *Hough* v. *Railway Co.*, 100 U. S. 213–217, the supreme court of the United States affirmed an exception applicable here. The court said :

"One, and perhaps the most important, of those exceptions arises from the obligation of the master, whether a natural person or a corporate body, not to expose the servant, when conducting the master's business, to perils or hazards against which he may be guarded by proper diligence upon the part of the master. To that end the master is bound to observe all the care which prudence and the exigencies of the situation require in providing the servant with machinery or other instrumentalities adequately safe for use by the latter."

In *Railroad Co.* v. *Ross*, 112 U. S. 377–383, 5 Sup. Ct. Rep. 184, the same court held that—

"It is indispensable to the employer's exemption from liability to his servant for the consequence of risks thus incurred that he should himself be free from negligence. He must furnish the servant the means and appliances which the service requires for its efficient and safe performance, unless otherwise stipulated; and if he fail in that respect, and an injury result, he is as liable to the servant as he would be to a stranger. In other words, whilst claiming such exemption he must not himself be guilty of contributory negligence."

In *Railroad Co.* v. *Herbert*, 116 U. S. 642–647, 6 Sup. Ct. Rep. 590, this doctrine was applied to a state of facts which serve to illustrate the practical application of the rule where contributory negligence is made part of the defense. In that case a brakeman was injured while acting under the orders of a yard master in attempting to stop cars by means of a brake that was out of order. To recover damages for the injury sustained he brought an action against the company, alleging that it was its duty to provide good and safe cars and machinery, and apparatus of a like character for braking and handling them, and also to make rules and regulations for switching and handling them in the yard, and for notifying employes of the condition of defective and broken cars, so that they might not be subject to unnecessary danger; but he alleged that the company had neglected its duty in these particulars, and thereby, without his fault, he was injured as stated. In its answer the company admitted the allegations as to the employment of the plaintiff and the injuries he had received, but set up that it was his duty to know, and that he did know, the condition of each of the cars, and that he carelessly put his leg between them when setting the brake, and thus, through his own fault, suffered the injury of which he complained. There was a verdict for the plaintiff for $25,000, which the court, on a motion for new trial, reduced to $10,000. The supreme court, in determining the question of law involved in this writ of error, said :

"The general doctrine as to the exemption of an employer from liability for injuries to a servant, caused by the negligence of a fellow servant in a common employment, is well settled. When several persons are thus em-

ployed, there is necessarily incident to the service of each the risk that the others may fail in that care and vigilance which are essential to his safety. In undertaking the service he assumes that risk, and, if he should suffer, he cannot recover from his employer. He is supposed to have taken it into consideration when he arranged for his compensation. * * * It is equally well settled, however, that it is the duty of the employer to select and retain servants who are fitted and competent for the service, and to furnish sufficient and safe materials, machinery, or other means, by which it is to be performed, and to keep them in repair and order. This duty he cannot delegate to a servant so as to exempt himself from liability for injuries caused to another servant by its omission. Indeed, no duty required of him for the safety and protection of his servants can be transferred so as to exonerate him from such liability. The servant does not undertake to incur the risks arising from the want of sufficient and skillful colaborers, or from defective machinery or other instruments with which he is to work. His contract implies that in regard to these matters his employer will make adequate provision that no danger shall ensue to him. This doctrine has been so frequently asserted by courts of the highest character that it can hardly be considered as any longer open to serious question."

In *Ford* v. *Railroad Co.*, 110 Mass. 240, the plaintiff was injured by the explosion of an engine upon which he was employed as engineer. The explosion was caused by a defect in the engine, due to the failure of the company to keep the engine in proper repair. It was contended on the part of the defense that negligence in keeping the engine in repair was the negligence of a fellow servant. The supreme court of Massachusetts held that the company was liable. The court said:

"The rule of law which exempts the master from responsibility to the servant for injuries received from the ordinary risks of his employment, including the negligence of his fellow servant, does not excuse the employer from the exercise of ordinary care in supplying and maintaining suitable instrumentalities for the performance of the work required. One who enters the employment of another has a right to count on this duty, and is not required to assume the risks of the master's negligence in this respect. The fact that it is a duty which must always be discharged, when the employer is a corporation, by officers and agents, does not relieve the corporation from the obligation. The agents who are charged with the duty of supplying safe machinery are not, in the true sense of the rule relied on, to be regarded as fellow servants of those who are engaged in operating it. They are charged with the master's duty to his servant."

In *Flike* v. *Railroad Co.*, 53 N. Y. 549, an agent of the company whose duty it was to make up and dispatch trains, and to employ and station brakemen thereon, sent out a train with two brakemen, when three was the usual number required. The agent did in fact employ a third brakeman, who, by reason of oversleeping, failed to get on board in time. The train parted, and in consequence of the want of necessary brakemen one part of the train ran back and collided with another train a short distance in the rear, killing a fireman on the latter train, who was also a servant of the company. The action was to recover damages for the death of the fireman. It was claimed that the injury was attributable to the negligence of the brakeman who failed to report for duty, or, if caused by the negligence of the agent in not supplying the place of the

defaulting brakeman with another man, such negligence in either case should be regarded as the negligence of a fellow servant, for which the company was not responsible. The court held that neither of these positions was tenable. In discussing the law applicable to the case, CHURCH, C. J., speaking for the court, said:

"The true rule, I apprehend, is to hold the corporation liable for negligence or want of proper care in respect to such acts and duties as it is required to perform and discharge as master or principal, without regard to the rank of the agent intrusted with their performance. As to such acts, the agent occupies the place of the corporation, and the latter should be deemed present, and consequently liable for the manner in which they are performed."

In *Cone* v. *Railroad Co.*, 81 N. Y. 206, the plaintiff was a car repairer in defendant's employ, and was injured by steam escaping from a locomotive engine. The engine was in many particulars in bad condition. Its fire box was burned out, stay bolts had given way, its cylinders needed boring out, its valves facing, it leaked badly, and its flues were defective, its throttle valve leaked, and the thread upon the screw which served to hold the reverse bar in place and thus control the motion of the engine was so worn out as to be useless. In consequence of these defects, the steam escaped from the boiler into the cylinders, the engine was put in motion, and the accident occurred of which the plaintiff complained. It was claimed on the part of the defendant that the engine was furnished with cylinder cocks; that these cocks, if opened, would have allowed the steam to escape, thus preventing its accumulation in the cylinder and its pressure upon the piston; that the engineer omitted to open the cocks, and was therefore guilty of negligence, and that it was this negligence which caused the injury, and so the defendant was exonerated. The court, in commenting upon this defense, said:

"But the cylinder cocks were part of a perfect machine; they were not added to supply the defects, or any of them, to which I have above called attention. Therefore the defendant's contention comes to this: 'We concede that we failed in our duty. We did not supply a suitable machine; but our servant, the engineer, could, notwithstanding, have so managed that the defect should cause no harm.' If this doctrine is accepted it will loosen the rule of responsibility which now bears none too closely upon corporate conduct. It will seldom happen that unusual care on the part of an engineer would not prevent an accident. In this case he might have opened the cocks, or blocked the wheels, or with extreme care so separated the engine from its train that the two should occupy separate tracks. It now seems that it would have been well to have done one or the other of these things. His omission to do so may have been negligence towards the defendant, but it does not remove the responsibility which attached to it to furnish good and suitable machinery, or place it upon a subordinate whose duty is to be measured by the degree of skill necessary for its management, and who is not called upon to make good the want of corporate care and attention."

The court said further:

"Neither upon principle nor authority can it be held that negligence of the servant in using imperfect machinery excuses the principal from liability to a coemploye for an injury which could not have happened had the machinery been suitable for the use to which it was applied."

Numerous cases might be cited to the same effect, but it will not be necessary to multiply authorities on the point, since the law is well established by the supreme court of the United States and by the highest courts in many states that the absence of superior rank or title in the intervening servant or agent will not exempt the master from liability for injuries resulting from the use of defective machinery or appliances. Tested by this rule, the allegations of the complaint in the present case concerning the use of the defective hand car at a high rate of speed under the direction of the section boss, in the manner described, whereby plaintiff was injured, state a cause of action. The complaint being sufficient in this particular, we might stop here, but we will notice briefly one of the remaining allegations, for the purpose of referring to another feature of the question where the liability of the master, according to some decisions, may be determined by the character of the duty required to be performed by the servant. The telegraph operator at Cheney is charged with negligence in not notifying the plaintiff and his coemployes on the hand car of the movements of the freight train, the danger of a collision with which caused the plaintiff to jump from the hand car, whereby he was injured. It was the duty of the company, as admitted in its amended answer, to furnish its employes engaged in maintaining its track and roadbed with information concerning the movements of trains over the sections on which they were employed. In the present case it is alleged that this duty was required to be performed by the telegraph operator at Cheney, but the designation of the official is immaterial. It was a direct, positive duty which the company owed such employes as were exposed to danger by the movement of trains. In *Lewis* v. *Seifert*, 116 Pa. St. 628–647, 11 Atl. Rep. 514, it was determined that a train dispatcher, wielding the power and authority of a railroad company in the moving of trains, in the changing of schedules, or the making of new ones, as exigencies required, is not a fellow servant with a train employe. The court, in its opinion, said:

"It is very plain that it was the duty of the defendant company, as between said company and its employes, to provide a reasonably good and safe road, and reasonably safe and good cars, locomotives, and machinery for operating its road. It is equally clear that it was its duty to frame and promulgate such rules and schedules for the moving of its trains as would afford reasonable safety to the operators who were engaged in moving them. This is a direct, positive duty which the company owed its employes, and for the failure to perform which it would be responsible to any person injured as a consequence thereof, whether such person be a passenger or an employe. It would be a monstrous doctrine to hold that a railroad company could frame such schedules as would inevitably, or even probably, result in collisions and loss of life. This is a personal, positive duty; and while a corporation is compelled to act through agents, yet agents, in performing duties of this character, stand in the place of and represent the principal. In other words, they are vice principals."

We are aware that there are decisions holding that a telegraph operator does not occupy the position of a train dispatcher merely because he transmits or delivers the orders for the movement of the trains, and that his negligence cannot be said to be the negligence of the company;

but it is not necessary, in this connection, to determine the actual duty or responsibilities of a telegraph operator. All this is covered in the present case by the allegations of the complaint, and upon the questions involved in the demurrer these allegations must be accepted as true. The point is that the duty of keeping the employes on the section informed as to the movement of trains over that section was a positive duty devolving upon the company, and, where injuries are sustained by reason of negligence in the performance of that duty, the company is liable. The complaint being sufficient in the particulars mentioned disposes of the first exception.

It is next claimed as error that the plaintiff was allowed on the trial to make a statement in narrative form, as a witness in his own behalf, without being specially interrogated by his counsel in reference to the particular matters involved in the case; that the statement was made in such a way as to afford the defendant no opportunity of making any objection to any particular portion, and was allowed to be made over the general objection that it contained matters immaterial to the issues, and incompetent as being hearsay and not the best evidence. It appears from the record that after a few preliminary questions the plaintiff was asked the following question by his counsel: "Turn to the jury, and tell them the facts in this case, commencing at the time of your employment with the Northern Pacific Railroad Company, and tell them the complete story." To this question no objection was made. The plaintiff therefore proceeded to relate the facts in the case as requested. After stating the particulars of his employment, the use of a hand car, the method of stopping it, and the breaking of one of its wheels, counsel for defendant objected to the course in which the taking of the testimony was proceeding, claiming that the witness was making a statement of matters immaterial to the issues involved in the case, and incompetent as being hearsay, and not the best evidence, and that he desired to interpose such objections, but that, owing to the fact that the testimony was being given in a narrative form, no opportunity was given counsel to properly interpose such objection. The court replied to this objection that the taking of the witness' testimony in the narrative form would be the best way of getting at what he knew or could state concerning the matter at issue; that it would save time to proceed in that way, and would perhaps furnish to the jury a more connected statement of the matter to be told as it occurred and took place. It was within the discretion of the court to allow the witness to give his testimony in a narrative form. Thomp. Trials, § 354. In general, this practice is commended by text writers. Mr. Chitty, in speaking of this method of examining witnesses, says:

"It is certainly the practice, when the time and place of the scene of action have once been fixed, to desire the witness *to give his own account of the matter*, directing him, when not a professional person, to omit, as he proceeds, account of what he has only heard from others and not seen or heard himself, and which he is apt to suppose is quite as material as that which he himself has seen."

The author says further:

"It is difficult, therefore, to extract the important parts of his evidence piecemeal, but if his attention be first drawn to the transaction by asking him when and where it happened, and he be told to describe it from the beginning, he will generally proceed in his own way to detail all the facts in the due order of time." 3 Chit. Gen. Pr. 894.

But if, in the giving of such testimony, the witness states matters irrelevant or immaterial or incompetent as being hearsay, it is the right and duty of counsel objecting to such testimony to interpose and arrest the narrative by calling the attention of the court particularly to the objectionable matter, and by a motion to strike it out obtain a ruling of the court excluding such testimony from the case. *Gould* v. *Day*, 94 U. S. 405-414. "It is the duty of a party taking exception to the admissibility of evidence to point the part out excepted to, when the evidence consists of a number of particulars, so that the attention of the court may be drawn to the particular objection." *Moore* v. *Bank*, 13 Pet. 302-310; *U. S.* v. *McMasters*, 4 Wall. 680-682. "It is the duty of the party to select the incompetent from the competent testimony, and to point out in his motion the specific testimony objected to, as well as to indicate the character of the objection." Thomp. Trials, § 719. It does not appear that counsel for defendant was deprived of an opportunity to make such a motion, and the proceedings cannot be considered as error.

Errors are assigned that the court allowed the plaintiff and another witness to answer certain questions over the objection of counsel for defendant. These questions related to and made inquiry concerning the power of the foreman, Kirk, to hire and discharge men; whether Kirk or the telegraph operator or any one told witness that they would meet a train; and as to the sufficiency of the brake on the hand car. The objection to each question, as stated in the assignment of errors, is that "what was sought to be shown thereby was not admissible as evidence by reason of being irrelevant, immaterial, and incompetent." This objection was not, however, incorporated into the bill of exceptions. All that appears there is the formal record: "Objection taken; overruled; exception allowed." The evidence called for appears to have been relevant, material, and competent; but the objection, as stated in the bill of exceptions, is too general to present any question for review. "Where evidence is objected to at the trial, if the party would save an exception to the ruling of the court if adverse to him, such as will be available on appeal or error, he must frame his objection so as to bring to the attention of the trial court the specific ground upon which he predicates it, and this must be stated in the bill of exceptions." Thomp. Trials, § 693, and cases there cited.

When the plaintiff had closed his testimony and rested his case, counsel for defendant moved the court for an order dismissing the case, and for the nonsuit of the plaintiff. The motion was denied, and the action of the court in denying the motion is claimed as error. The refusal of the court to grant this motion was in accordance with the established practice. It has been repeatedly decided by the supreme court

that courts of the United States have no power to order a peremptory nonsuit against the will of the plaintiff. *Elmore* v. *Grymes*, 1 Pet. 469; *De Wolf* v. *Rabaud*, Id. 476–496; *Crane* v. *Morris' Lessee*, 6 Pet. 598–610; *Silsby* v. *Foote*, 14 How. 218–222; *Castle* v. *Bullard*, 23 How. 172–183. It is also assigned as error that the court should not have required defendant to proceed to its defense after plaintiff had rested his case, but should have directed the jury to return a verdict in favor of the defendant. That motion, however, does not appear, by the bill of exceptions, to have been made by counsel for defendant; besides, he proceeded with the defense, and introduced testimony in that behalf. This action on his part effectually disposed of all question of error. The refusal of the court to instruct the jury at the close of plaintiff's evidence that he was not entitled to recover could not be assigned as error, even if the proper motion had been made, because the defendant, at the time of requesting such instruction, had not rested its case, but afterwards went on, and introduced evidence in its own behalf. *Railway Co.* v. *Cummings*, 106 U. S. 700, 701, 1 Sup. Ct. Rep. 493; *Insurance Co.* v. *Crandal*, 120 U. S. 527–530, 7 Sup. Ct. Rep. 685; *Robertson* v. *Perkins*, 129 U. S. 233–236, 9 Sup. Ct. Rep. 279.

The testimony of both parties having been concluded, defendant's counsel, by motion, requested the court to direct the jury to return a verdict in favor of the defendant upon the grounds that the evidence submitted on the trial of the case was not sufficient to establish the liability of the defendant for any injuries sustained by the plaintiff; that it appeared from the evidence that whatever injuries were sustained by the plaintiff were occasioned by his own negligent and careless acts and by the negligence and carelessness of those who were fellow servants with him in the same employment; and that it appeared from the evidence that whatever injuries occurred to plaintiff were without the fault or negligence of the defendant, or of any of its servants or agents or employes for which it was responsible or liable to the plaintiff. The court refused to direct the jury as requested, and the denial of the motion is assigned as error. It is well settled that the court may withdraw a case from the consideration of the jury, and direct a verdict for the plaintiff or the defendant, as the one or the other may be proper, where the evidence is undisputed, or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict in opposition to it. *Railroad Co.* v. *Converse*, 139 U. S. 469–472, 11 Sup. Ct. Rep. 569. Does the present case come within this rule? The evidence introduced on the part of the plaintiff tended to prove the following facts: Plaintiff was employed by the defendant in section work under a foreman. When he went to work, the hand car in use on the section had no brake attachment, but was stopped by means of a stick inserted between the spokes of one of the wheels. This stick was used for this purpose until Kirk became foreman of the section, when one day, in attempting to stop the car to get out of the way of a train following rapidly behind it, the workman performing the duty of stopping the car by this device struck a spoke in a wheel and the stick

was knocked out of his hands. They had difficulty on this occasion in stopping the car, and a narrow escape in getting it off the track, but they worked along in this way until a wheel broke off, when Kirk, the foreman, applied to the road master for a new car. He failed to get it. The disabled car was thereupon repaired by an old wheel in place of the broken one, and the foreman nailed a stick on the side of the car for a brake. The upper end of this stick being pulled back, its lower end pressed upon one of the wheels, acting as a brake. When the foreman placed this stick on the car he called the attention of the section men to it, and said: "Now it is not like the last brake. It is good and solid, and cannot get away from us. It is a big improvement on the last one." They did not, however, meet a train with this car until the morning of the accident. That morning an extra freight train came into the station at Cheney. The section house was about one fourth of a mile east of the station. The section men waited awhile for this train to pass. It did not, but stopped at the station. The foreman, Kirk, with plaintiff and the other section men, went to the station. From this point the testimony tending to prove the circumstances immediately connected with the accident may be stated in the language of the plaintiff, who testified as follows:

"We went to the station, and, when we went by, Kirk told us to stop; that he wanted to go into the station, and see about something. We stopped, and went to doing something like shoveling cinders while Kirk crossed over. This train was on the inside of the station from us. He crossed over the train, and went as far as the station. I would not swear he went in. After a while he came back. He said, 'Boys, get on and go to work.' We got on, and went to work, and when we got about one and three quarter miles,—the third mile,—we were nearing a cut, and where the engine was supposed to whistle. This third mile commenced with that cut, and from there there were cuts and curves and much timber along the line. There were fires along there, which we put out, and lots of smoke, and besides it was misty and foggy. When we got out here,—one and three quarter miles,— Kirk says: 'Boys, this is too fast running. They told me that this train, at the station, they could see another section between here and Sprague coming behind them; that it was coming at a fast rate, to make some point in Montana. It was running extra fast to make this point.' I turned around, and the men done the same, and tried to stop this car, which I believe was running about ten miles or so. We tried to stop it, and this man at the brake—it had been so loose, he always had to hold it to keep it there, whether braking the car or not—this man put on the brake; and I was on the west end, going out towards the train. The rest were on the east or hind end. There was no one on the front end but me. This man put the brake on, and I tried at the pump handles to hold on to stop it, when he said we were going too fast. He said, 'It must be pretty close on us now;' and I tried for a while to stop it, and in or about the time that he told us the fast train was coming, he looked and said: 'Boys, here she is. It is right onto us. Get on that brake, and get the car off before she comes on us.' So we used the brake and handles, but we saw it was coming to no stop, or not likely to, and I looked to see behind me if this train was near, and at the time I looked it was about one hundred feet, and I believe nearer than that. I saw there was no sign of the car coming to a stop. There were shovels and picks and sledges and tools of different kinds, and the

large jack; all these were piled on the side. They made a practice of putting them on the end of the car there was least on, and I being alone they were on my side, so I was standing in the center in front of this place to jump. I saw the train inside of one hundred feet, and no sign of its stopping, and no whistle being made, though she had crossed the crossing. I made an effort to jump to the side of the car, but as the wheel comes over the car it was not easy to jump across. I tried to jump over the end, and I did not get as far as the rail on the side, as I jumped to the south. The south side of the car hit me on the side of this leg, and it knocked me right onto the track ahead of the car. The car was following closely, and I knew that I could not help being catched. As it hit me and knocked me ahead I tried to raise my feet and stop it, but the car caught my foot, and it was coming so fast that it was of no avail. It doubled me over and cramped me up, and put my head where my feet were,—turned me over. The other leg was caught in the cog of the wheel. I brought the car to a stop, and the men jumped off. I was lying on the gravel. One of the men hollered to me, and said: 'Are you hurt?' Kirk said: 'There is no time for this. Get hold of the car, and get it off the track before the train runs over him.' So they got hold of the hind end, and caught it up, and run around with it, and pulled it down the roadbed after them, and so when my head was towards the rail by their turning the car around the engine went by and blew sand and dirt onto my head. By the time they got around this cog wheel turned a different way, and released my pants, so that I fell out, and some of them hollered to this train to stop and come back, but the train ran past quite a ways, and they picked me up and carried me up the track, and put me on the train, and left me at the station, which was Cheney."

Plaintiff further testified in substance upon direct and cross-examination, among other things, that there was a crossing near where the approaching train was at the time of the accident; that plaintiff did not hear the engine whistle; that if it had whistled he would have heard it; that the freight train was running at the rate of nearly 30 miles an hour when it passed him after the accident; that as soon as Kirk notified the men on the car that a train was coming they took means to stop the car by the man at the brake bearing down on it; that the brake was a piece of slab that Kirk had picked up, about two feet six inches long; that he nailed it to the side of the car between the front and hind wheels, about five or six inches ahead of the wheel. The wide side of the stick was to the side of the car, with a nail driven through it, and the narrow side was to take up and hold by, and by holding down with the hand the brake was applied to the wheel. The side of the stick towards the car was about three inches wide, but the side that rubbed on the wheel was not two inches. The wheel was about three inches wide. The plaintiff never objected to these appliances, nor to the condition of the car. He did what he was told, and worked the best he could. As far as the car was concerned, he did not claim to have known anything, because it was his opinion when they put on the brake it was first class. Had been told since that it was not.

In addition to the testimony, evidence was introduced by plaintiff tending to prove that the brake on the hand car was not a good one; that if it had been a good brake it could have stopped the hand car in time for plaintiff to have got off; that the brake operated only on

one wheel, and that wheel loose; that wheels on the car were not mates; that two were alike, and the other two did not belong to the same car; that the cog wheels sometimes slipped, and that the car was a patched-up car; that the cut near where the accident occurred was 20 feet high, and that the engine of the approaching train did not whistle before entering the cut; and that there was a telegraph operator at Cheney. It is admitted in the answer that it was the duty of defendant to furnish laborers engaged in maintaining the track and roadbed of defendant with necessary information as to the passing of trains on the defendant's road.

The testimony on the part of the defense tended to prove that the section on which plaintiff was employed was the easiest on the division; that the appliances for the hand car were good for the section; that the lever brake on the car at the time of the accident was as good as any in use on the road; that it rubbed on the top of the hind wheels and the lower rim of the front wheels, and by its application on the occasion in question the car had almost stopped when Charless went off; that the cut near where the accident occurred was from six to eight feet high, and persons approaching it at one end could see across the tangent of the cut and curve to the other end. It will not be necessary to refer further to the testimony on the part of the defense; enough has been stated to show that it contradicted the testimony on the part of the plaintiff in many particulars. It was the province of the jury to weigh this conflicting evidence, and determine the actual facts. It was a fair question for the jury to determine from the testimony whether the accident would have happened if the defendant had used ordinary care in providing the plaintiff and his coemployes on the section with a hand car suitably equipped with a safe and effective brake for the work in which they were engaged. *Railroad Co.* v. *Young,* 1 U. S. App. 96, 49 Fed. Rep. 723–725. It was also a fair question whether the accident would have happened had the defendant used ordinary care in the movement of its trains, and in notifying the section men of the approach and passage of such trains.

In *Railway Co.* v. *Ives,* 144 U. S. 408–417, 12 Sup. Ct. Rep. 679, plaintiff's intestate was killed by a railway train at a street crossing in the city of Detroit. In the court below the question of negligence or want of ordinary care and prudence was submitted to the jury to decide. The supreme court held that the instruction to this effect was correct, and in defining the province of the jury in such a case said:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms ' ordinary care,' ' reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particu-

lar case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court. *Railroad Co.* v. *Pollard,* 22 Wall. 341; *Railroad Co.* v. *Converse,* 139 U. S. 469, 11 Sup. Ct. Rep. 569; *Thompson* v. *Railway Co.,* 57 Mich. 300, 23 N. W. Rep. 820; *Railway Co.* v. *Miller,* 25 Mich. 274; *Railway Co.* v. *Van Steinburg,* 17 Mich. 99, 122; *Gaynor* v. *Railway Co.,* 100 Mass. 208–212; *Railroad Co.* v. *Picksley,* 24 Ohio St. 654; *Railroad Co.* v. *Ogier,* 35 Pa. St. 60; *Robinson* v. *Cone,* 22 Vt. 213; *Jamison* v. *Railroad Co.,* 55 Cal. 593; Redf. R. R. (5th Ed.) § 133, p. 2; 16 Amer. & Eng. Enc. Law, tit. ' Negligence,' 402, and authorities cited in note 2."

We think, upon the testimony in this case, the court below properly denied the motion to direct the jury to return a verdict for the defendant.

Exceptions were taken to the following instructions of the court, and the giving of each instruction is separately assigned as error. They will be considered together:

"I think that the case, when stripped of all the side issues, and the incidental questions surrounding it, resolves itself into just this question for this jury to determine: Whether the injury to the plaintiff resulted directly from the negligence of the defendant in needlessly exposing him to the danger of being hurt by a collision between the hand car and the extra freight train at the place where it occurred, or whether the injury was a mere accident, which was the result of one of the ordinary hazards of the employment in which he was engaged; whether it was an ordinary risk of his employment, or whether an extraordinary danger, caused by a negligence on the part of the defendant; whether that negligence was a negligence of the foreman in running the hand car too fast up to a point which he knew to be dangerous, and which he did not warn the other men working on the hand car of, so that it was impossible for them, without extreme hazard to their lives, to avoid a collision, or whether the negligence was on the part of the officers in charge of the freight train in approaching a curve in the cut, which obstructed the train from view, or passing a public crossing, without giving warning by sounding the whistle or engine bell. If in any of these respects there was actual neglect on the part of defendant, which placed the plaintiff in a situation of extraordinary danger, something clearly beyond the ordinary risks of his employment, and his injury was not in any degree owing to his own negligence at the time, the defendant would be liable to damages, and be liable even though the plaintiff, when in a situation of imminent and apparent danger, may have made a mistake on his part in attempting to escape from the danger, as by attempting to jump in the wrong direction. Even a mistake of that kind, happening at a moment of extreme peril, would not be regarded as reckless or negligent act on the part of plaintiff which would preclude him from recovering damages. But if, on the other hand, this injury to him resulted from his own act in attempting to jump from the hand car at a time when it was his duty to have remained on the hand car, and assist the others in checking its speed, and removing it from the track, so as to get it out of the way, and when he had no reasonable cause to regard himself as being in extreme danger; or if the defendant was entirely guiltless of any negligence; if the foreman was not guilty of imprudence in running the hand car at the rate it was going; if the

freight train did not approach a curve or crossing where it was the duty of the engineer to give warning,—so that there was no negligence on the part of the defendant,—then your verdict should be in favor of the defendant. If the jury find from the evidence that the hand car in question was a necessary implement in the carrying on of the company's work, and that the said hand car was not sufficiently provided with a sufficient brake to stop it within a proper and reasonable time when in danger of collision with other trains on said road, of which defect plaintiff had no knowledge, and could not reasonably be required or expected to have such knowledge, and that by reason of such defective brake plaintiff was injured, without contributing his own negligence to such injury, then the company is liable to plaintiff in damages for such injury. If the jury find from the evidence that plaintiff was injured by or on account of defendant's negligence, to which plaintiff did not contribute by his own negligence, then the fact that the negligence of plaintiff's fellow servants contributed to such injury is no defense to an action by plaintiff for damages on account of such injury."

It is objected that the questions so submitted to the jury were not put in issue by the pleadings, and that there was nothing in the evidence to justify their submission by the court to the jury. Much that is said in support of these objections was urged in effect against the sufficiency of the allegations of the complaint, and in favor of the motion to direct the jury to find for the defendant, and need not be further considered. It is objected, however, that the instructions contained the statement of certain situations in the alternative, the existence of any one of which rendered the company liable for the injury of the plaintiff. Two of these remain to be noticed: (1) Whether there was negligence on the part of the foreman in running the hand car too fast up to a point which he knew to be dangerous, and of which he did not warn the other men working on the hand car, so that it was impossible for them, without extreme hazard to their lives, to avoid a collision. (2) Whether the negligence was on the part of the officers in charge of the freight train in approaching a curve in a cut which obstructed the train from view or passing a public crossing without giving warning by sounding the whistle or engine bell.

Standing alone, the first situation would seem to involve the question as to whether the foreman was a fellow servant of the plaintiff, but the conduct of the foreman in this case in operating the hand car cannot be wholly separated from the antecedent and then existing condition of the car itself. Had the company furnished a new hand car, with proper brake appliances, in place of the broken and disabled car, or repaired the latter with a new and effective brake, the imminent danger of collision with the freight train would not have occurred. The defendant is not liable if the negligence of a fellow servant is the sole cause of the accident, because, being a fellow servant, his negligence is one of the risks for which the defendant as master did not assume to be responsible. But negligence of a fellow servant does not excuse the master from liability to a coservant for an injury which would not have happened had the master performed his duty. *Railroad Co.* v. *Young, supra.* The situation indicated by the court must therefore be considered in connection with the surroundings and circumstances of the case, and particu-

larly with respect to the testimony relating to the safety of the hand car. The jury could not have ignored this feature of the case under the instruction as given, and, taken in connection with other instructions, we cannot see that the defendant was prejudiced by it, even if we assume that the foreman was a fellow servant of plaintiff.

The second situation suggests the same question with respect to the conduct of the conductor and engineer of the freight train, and it also necessarily involves the question as to the condition of the hand car. The testimony tending to prove negligence on the part of the conductor and engineer of the freight train is not answered by saying that they must have supposed that the hand car was properly equipped with a safe and effective brake, and that the section men would therefore be able to escape from the track with the car in time to avoid a collision. It was the duty of those in charge of the freight train to observe every rule of safety established for the movement of their train, and the employes on the hand car had the right to expect from them the usual warnings in approaching places of danger. In *Railroad Co.* v. *Ross*, 112 U. S. 377, 5 Sup. Ct. Rep. 184, the liability of a railway company for the negligence of a train conductor was fully discussed, and it was there held that he was not the fellow servant of the engineer and other employes of the corporation on the train. The principles of law declared in that case would determine that the conductor and engineer of a freight train were not the fellow servants of a section hand, employed as was the plaintiff in this case; but it is not necessary to pass upon that question here in view of the other circumstances attending the situation. Moreover, there is evidence tending to show that the freight train referred to in the instructions was the second section of a special freight train, running "at a fast rate, to make some point in Montana. It was running extra fast to make this point." Clearly the movement of such a train must have been under the direction of an officer "clothed with the control and management of a distinct department," and the negligence of the officers in charge of such a train in not giving the usual warning in approaching a curve in a cut, or in passing a public crossing, was not one of the usual and ordinary risks assumed by plaintiff as incident to his employment.

Furthermore, the instructions were qualified by the following instructions, given by the court on its own motion, immediately preceding those to which exceptions were taken:

"To explain this matter a little more fully, it is a principle in all suits to recover damages for negligence, that the plaintiff cannot recover if the injury to himself was in part owing to his own negligence, (or, in law, contributory negligence,) even though there was negligence on the part of defendant which caused the injury. If that injury was also in part caused by contributory negligence on the part of the plaintiff, plaintiff cannot recover damages. It is also a principle governing suits to recover damages by employes against the employer that the employe, as a part of his contract of employment when he goes into the service, assumes on his part the risks and dangers that are ordinarily incident to the service in which he engages. He also assumes on his part that he is competent to perform the service which he undertakes to perform; that he has sufficient knowledge of the tools and implements

which he is required to use in the service to know when they are safe and suitable, and to look out for himself against injury resulting from the use of such tools as are suitable and proper. And it is his duty, if he is handling implements which he knows unsuitable, to give notice of it to his employer; and a failure on his part to perform the duty of giving notice would absolve the employer from liability for injury resulting from such defect."

The following instructions, among others, were also given by request of counsel for defendant:

"The jury are instructed that the defendant was not a guarantor of the safety of its machinery and appliances, and was only bound to use ordinary care and prudence in the selection and arrangement and care thereof, and had a right to use and employ such as the experience of trade and manufacture sanctioned as reasonably safe. The defendant was not and is not bound as an employer to insure the absolute safety of the machinery or mechanical appliances which it provided or provides for the use of its employes, nor was it bound to supply the best and safest or newest of appliances for the purpose of securing the safety of those who are employed by it. If the plaintiff himself was wanting in such reasonable care and prudence as would have prevented the happening of the accident, he is guilty of contributory negligence, and defendant is thereby absolved from responsibility for the injury, although it was occasioned by the defect of the machinery or appliances through the negligence of the defendant."

We are of the opinion that the instructions, taken altogether, and in view of all of the circumstances of the case, were fair and reasonable, and guarded the interest of the defendant at every point. As was said by Judge BREWER in *Crew* v. *Railway Co.*, 20 Fed. Rep. 94:

"The question in all such cases is not whether some technical error may not have crept into the instructions, but whether, taking the case as a whole, and looking at the instructions as a whole, it is apparent that the law was presented fairly and correctly to the jury."

It is assigned as error that the court should not have denied defendant's motion for a new trial, and should not have rendered any judgment in favor of the plaintiff. In the petition for a new trial the grounds alleged in that behalf were accident and surprise, which ordinary prudence could not have guarded against; newly-discovered evidence material for defendant, which it could not with reasonable diligence have discovered and produced at the trial; insufficiency of the evidence to justify the verdict, and that the verdict was against the law; error in law occurring at the trial, and excepted to at the time by the defendant; and excessive damages, the award made by the verdict appearing to have been given by the jury by reason of passion and prejudice. The overruling of a motion for a new trial is not a subject of exception under the practice established in courts of the United States. *Parsons* v. *Bedford*, 3 Pet. 433–445; *Minor* v. *Tillotson*, 2 How. 392–394; *Barreda* v. *Silsbee*, 21 How. 146–167; *Insurance Co.* v. *Folsom*, 18 Wall. 237–249; *Railroad Co.* v. *Horst*, 93 U. S. 291–301; *Railroad Co.* v. *Fraloff*, 100 U. S. 24–31; *Newcomb* v. *Wood*, 97 U. S. 581–583; *Missouri Pac. Ry. Co.* v. *Chicago & A. R. Co.*, 132 U. S. 191, 10 Sup. Ct. Rep. 65; *Fishburn* v. *Railway Co.*, 137 U. S. 60, 61, 11 Sup. Ct. Rep. 8; *Wilson* v. *Everett*, 139 U. S. 616–621, 11 Sup. Ct. Rep. 664; *Insurance Co.* v. *Ward*, 140 U. S. 76, 11

Sup. Ct. Rep. 720; *Railroad Co.* v. *Winter*, 143 U. S. 60–75, 12 Sup. Ct. Rep. 356. In the last case the supreme court states the province of the court as follows:

"Whether the verdict was excessive is not our province to determine on this writ of error. The correction of that error, if there were any, lay with the court below upon a motion for a new trial, the granting or refusal of which is not assignable for error here. As stated by us in *Insurance Co.* v. *Ward:* 'It may be that if we were to usurp the functions of the jury, and determine the weight to be given to the evidence, we might arrive at a different conclusion. But that is not our province on a writ of error. In such a case we are confined to the consideration of exceptions, taken at the trial, to the admission or rejection of evidence, and to the charge of the court and its refusals to charge. We have no concern with questions of fact, or the weight to be given to the evidence which was properly admitted.' "

Judgment affirmed.