### FROST v. OREGON SHORT LINE & U. N. RY. CO.

(Circuit Court, D. Montana, S. D.    September 24, 1895.)

#### No. 1.

RAILWAY COMPANIES—NOTIFYING CHANGE OF TIME—DELEGATION OF AUTHORITY—FELLOW SERVANTS.

It is the duty of a railway company to establish the time for running trains, their arrival at stations, and speed, and to exercise reasonable care to bring the time table and any temporary changes in it, caused by delays or otherwise, to the notice of all persons who are charged with operating trains on its track; and the duty of establishing such time table and giving notice thereof, or of any changes therein, cannot be delegated to any subordinate, so as to absolve the company from responsibility for his negligence. Accordingly, where an engineer on the defendant railway company's road had been killed in a collision, caused by the negligent omission of a telegraph operator to transmit the order of the train dispatcher

relative to a change of running time, *held* that the defendant railway company could not escape liability on the ground that the engineer and telegraph operator were fellow servants.

This was an action by Hattie Frost, as administratrix of the estate of James W. Frost, against the Oregon Short Line & Utah Northern Railway Company to recover damages for the death of the intestate. Plaintiff recovered a verdict. Defendant moved for a new trial. Denied.

F. T. McBride and Geo. W. Stapleton, for plaintiff.

J. S. Shroshire and H. J. Burleigh, for defendant.

KNOWLES, District Judge. James W. Frost was an engineer in the employ of the Oregon Short Line & Utah Northern Railway Company. He was killed while in such employ, and his wife, as administratrix of his estate, brought this suit, alleging that he was killed through the negligence of said company, and asked damages. The action was authorized under the provisions of sections 981 and 982 of the Compiled Statutes of Montana, which read as follows:

"Sec. 981. Whenever the death of a person shall be caused by the wrongful act, neglect or default of another, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages, then and in every such case the person who, or the corporation or company which would have beeen liable if death had not ensued, shall be liable for an action for damages, notwithstanding the death of the person injured and although the death shall have been caused under such circumstances as amount in law to felony.

"Sec. 982. Every such action shall be brought by and in the name of the personal representatives of such deceased persons, and the amount received in any such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate, and in every such action the jury may give such damages, not exceeding twenty thousand dollars as they shall deem a just compensation with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased. Provided that every such action shall be commenced within three years after the death of such person."

The evidence in the case showed that said James W. Frost, on the 1st day of February, 1891, was an engineer on one of defendant's passenger trains, termed "No. 5," and which train was running north on the railroad track of defendant towards the city of Butte, Mont. On that date there was also another train on said track belonging to defendant, running south from said city of Butte to Dillon, in said state. This train was termed "No. 32." On said day train No. 5 was running on schedule time, and train No. 32 was behind time. The train dispatcher of said company, having his office at Pocatello, Idaho, finding that train No. 32 was behind time, sent an order by telegram to the conductor of said train No. 32, directed to a station on the line of said road called Glenn, to go to Dillon using the time of train No. 5. At the same time he sent an order to Dillon to the conductor of train No. 5 to stop at Dillon 2:45 P for train No. 32. The telegraph operator, Stuerer, at Dillon, did not give the conductor of said train No. 5 this order, as he was required, and he did not

change the signals at the Dillon station, as required by the rules of the company. Signal white, which was displayed, signified that the track was clear. Had he displayed red, as he should have done, it would have indicated that the train was to stop for orders. In consequence of this failure to give the conductor of train No. 5 the order of the train dispatcher, and of his failure to display the signal red, train No. 5 proceeded north from Dillon on the regular schedule time, and at a short distance north from said place collided with said train No. 32, and on account of this collision Engineer Frost received such injuries as caused his death. It seems that the telegraph operator, Stuerer, received the said dispatch from the train dispatcher at Pocatello, repeated the same back to said train dispatcher, and received the dispatch "O. K.," which indicated that the order received at Dillon was correct. Under these circumstances there can be no doubt but that the said Frost was killed on account of the negligence of said telegraph operator at Dillon.

The defendant asked the court to instruct the jury to bring in a verdict for defendant, on the ground that the company was not liable for the negligence of its telegraph operator, under the circumstances presented, as he was a fellow servant of the deceased, Frost. The court refused to give this instruction, and charged upon this point as follows:

"As you have heard me state in deciding the motion in this case, the railroad company, in changing the time of the running of trains, was required to notify the engineer and conductor of the railroad train that the time had been changed, and, if they failed to do so, that was negligence upon their part. If they intrusted—the railroad company intrusted—to any one else to give that notice, and that person, through negligence on his part, failed to give that notice, why, then, the company was liable for that negligence. It was the duty of the company to give that notice, and, if it intrusted that duty to the telegraph operator, the acts of that telegraph operator were the acts of said company. If he was negligent in this matter, that was the negligence of the company."

Counsel for defendant excepted to the refusal of the court to give the above instruction asked by it, and to the giving of the above portion of the charge the court gave to the jury. The jury found a verdict for plaintiff. Defendant petitioned the court for a new trial, and assigned the above rulings as a ground therefor. Plaintiff's counsel insist that there were other matters presented to the jury which would have justified the verdict they found. If the court erred in refusing the instruction asked by defendant, or in giving the portion of the charge above named, it committed errors which are sufficient to justify the court in awarding a new trial. The point involved in the position taken by the court is: Was the telegraph operator at Dillon a fellow servant of Frost, or was he, in the matter of notice of a change of running time of the train upon which Frost was an engineer, performing a duty which the said railway company was required to perform itself, and could not intrust to another without said other person representing the said company, and acting for it? If the said operator was only a fellow servant of Frost in the matter of giving notice of the change of the time of running trains, then the company was not liable for his negligence. Frost,

as an employé of the said railway company, undertook, as one of the risks of his employment, that he would suffer the consequences arising from the negligence of a fellow servant in a common employment with him, and that the railway company should not be responsible therefor. It is conceded that it was the duty of the railway company to establish the time for running trains, the hour of their departure and arrival at stations, and their speed. This is usually done by the train dispatcher establishing what is termed a "time table." This is the act certainly of the company. If a time table is changed temporarily, this must be done by the train dispatcher. He acts in both cases in the name of the superintendent of the company or of its road. A railway company, however, does not perform its whole duty to its employés when it establishes a time table, either general or temporary. It should exercise reasonable care, under all the circumstances, to bring this time table to the notice of all persons who are charged by it with the operating of trains on its railway track. The notice of a temporary change in a time table is as necessary as the notice of the general time table. The temporary change is made by the train dispatcher using the name of the superintendent of the road. There is more danger to be apprehended from the establishment of a temporary time table when a general one has been in use than from the establishing of a general time table in the first place. It is admitted in Railroad Co. v. Camp, 13 C. C. A. 233, 65 Fed. 952, 960, that a train dispatcher, in establishing a general, temporary, or special time table, acts as a representative of the company, and that the duty devolves upon the company of giving notice of these several time tables to those who are to operate trains on its track. It is said in the same case by the court:

"It is the further duty of the company to promulgate the rules and time table, and to see to it that they are brought to the knowledge of their employés engaged in running their trains. Whenever the time table is disregarded, and trains are run upon telegraphic orders, this is but the establishment of a temporary time table by the company."

The cases cited by the court in that case fully maintain this rule.

When the act to be performed is one which it was the duty of the railway company, as master, to execute, can it in any way transfer this duty to another, and exonerate itself from liability in case this other person is negligent in its performance? I think, under established federal authority, it cannot. In the case of Hough v. Railway Co., 100 U. S. 213, the supreme court, after stating that the duty was cast upon a railroad corporation of providing suitable machinery and appliances to be used by its employés, held:

"Those, at least, in the organization of the corporation who are invested with controlling or superior authority in that regard, represent its legal personality. Their negligence, from which injury results, is the negligence of the corporation. The latter cannot, in respect to such matters, interpose between it and the servant, who has been injured without fault on his part, the personal responsibility of an agent, who, in exercising the master's authority, has violated the duty he owes as well to the servant as to the corporation."

In the case of Railroad Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, the supreme court approved of the rule above announced. In that

case the defendant in error was a brakeman on one of the trains of plaintiff in error, and was injured in the Northern Pacific Railroad Company's yard at Bismarck, Dak., on account of a defective car. The court, after stating that if the railroad company appointed no one to look after its cars and keep them in repair, it was guilty of negligence, said:

"If, however, one was appointed by it, charged with that duty, and the injuries resulted from his negligence in its performance, the company is liable. He was, so far as that duty is concerned, the representative of the company; his negligence was its negligence, and imposed a liability upon it."

So far as the providing and maintaining suitable machinery and appliances for his employés, these two cases establish the rule that a master cannot, by delegating his authority in regard thereto, escape liability for the negligence of such person, that such person acts for him, and is his representative.

The case of Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, was one which was undoubtedly fully considered. In it the rules of law applicable to the duty of a master towards his servants was quite fully stated. In it the court said:

"Again, a master employing a servant impliedly engages with him that the place in which he is to work, and the tools or machinery with which he is to work or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place and the tools and the machinery, and when he employs one to enter into his service he impliedly says to him that there is no danger in the place, the tools, and the machinery than such as is obvious and necessary. Of course, some places of work and some kinds of machinery are more dangerous than others, but that is something which inheres in the thing itself, which is a matter of necessity, and cannot be obviated. But within such limits the master who provides the place, the tools, and the machinery owes a positive duty to the employé in respect thereto. That positive duty does not go to the extent of a guaranty of safety, but it does require that reasonable precautions be taken to secure safety; and it matters not to the employé by whom that safety is secured or the reasonable precautions therefor taken. He has the right to look to the master for the discharge of that duty; and if the master, instead of discharging it himself, sees fit to have it attended to by others, that does not change the measure of obligation to the employé, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects. Therefore it will be seen that the question turns rather on the character of the act than on the relations of employés to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master."

In addition to the duty of the master to provide proper tools and machinery for the use of his servants, we have the additional duty stated in this case that he must exercise reasonable care in providing a safe place for his servant to work in. Under what head of the list of duties required of a master towards his servant shall we place the duty of a railroad company to establish time tables, and give notice thereof to those engaged in managing and running trains? I apprehend we must class that duty under the head of the obligation of the master to provide a suitable place for his servant to work in. This being the case, the duty of giving notice to those running a train devolves upon the railroad company, and those who undertake or are intrusted with this office personally represent it. As is shown by

the above authorities, a master cannot delegate the duty of providing a safe place in which his servant is called upon to work, so as to escape responsibility, if there is a want of proper care in providing such place. In the case of Railroad Co. v. Camp, supra, it is sought to make a distinction between the duty of the master as to giving notice of a general time table and his duty as to a temporary time table. It is claimed that when a general time table is established ample time is afforded for giving notice thereof, but that a different state of facts exist when a temporary time table is established. In this case, however, it is admitted that the establishing of a temporary time table is the work of the railroad company, and the duty of giving notice of any time table, general or temporary, devolves upon it. How can it be claimed then that in one case more than another this duty of the master can be turned over to a fellow servant of those who are operating his trains, and be relieved from liability? The duty of giving notice in both classes of time tables is the duty of the master, and the master cannot delegate his duty to another without being responsible for his negligence. That is the rule undoubtedly established by the supreme court. The character of the act determines the duty of the master. In this case of Railroad Co. v. Camp the court quotes this approvingly from Slater v. Jewett, 85 N. Y. 62:

"It is not true that on an occasion like this it is the duty of the master, or a part of his contract, to see to it as with a personal sight and touch that notice of a temporary and special interference with a general time table comes to the intelligent apprehension of all those whom it is to govern in the running of trains. It is utterly impracticable so to do, and a brakeman or a fireman on a train knows that it is, as well as any person connected with the business. He knows that trains will often and unexpectedly require to be stopped, and that such orders must, from the nature of the case, be given through servants skilled in receiving and transmitting them. If there is due care and diligence in choosing competent persons for that duty, negligence by them in the performance of it is a risk of the employment that the coemployé takes when he enters the service."

This language might be used in regard to many matters in managing a railroad which are classed as the duties of the company owning the same. It cannot be expected that the company as with a personal sight and touch will examine every car wheel and truck of a railroad train it operates on its track, and it is evident that the examination of such appliances must be made by an employé. The same remarks may be made in regard to a railroad track. It cannot be expected that every railroad company can as with personal sight and touch examine every rail of iron or steel or every bridge or trestle along its road. Yet it has been held that whoever performs these duties acts for the company, and his negligence is that of the company.

In the case of Railway Co. v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756, a wheel of one of the Union Pacific Railway Company's freight cars, at its station known as Green River, was out of repair. The allegations in the complaint were that the defect in the wheel, which was a crack, could have been discovered by proper inspection at that station, which was an inspecting station. It could not be contended that every master as with a personal sight and touch could examine

every car and car wheel at such a station as Green River in so long a line as that of the Union Pacific Railroad. It is evident that such a service must be performed by an employé skilled in such matters. The Union Pacific Railway Company was held liable in the above case, and the supreme court sustained the judgment on the ground that it was the duty of the railroad company to provide and maintain suitable appliances for the use of its employés.

In the case of Railroad Co. v. Charless, 2 C. C. A. 380, 51 Fed. 562, the circuit court of appeals for the Ninth circuit held that under certain circumstances a telegraph operator was not a fellow servant of a section hand injured while upon a hand car of the company, going to his work, on account of a collision with a train of plaintiffs in error. In that case the complaint, among other matters, sets forth:

"That at said date [28th of August, 1886] defendant had in its employ at Cheney a telegraph operator whose duty it was to know the time of passing trains over defendant's road in the vicinity of Cheney, and the times of their arrival and departure therefrom, and to inform defendant's servants and employés, where safety and welfare might be endangered thereby, of the times of the running of such trains."

The complaint was demurred to, and the point as to the position of the telegraph operator in giving notice to employés came up for consideration, and the court said:

"We are aware that there are decisions holding that a telegraph operator does not occupy the position of a train dispatcher merely because he transmits or delivers the orders of the movement of the trains, and that his negligence cannot be said to be the negligence of the company; but it is not necessary in this connection to determine the actual duty or responsibility of a telegraph operator. All this is covered in the present case by the allegations of the complaint, and upon the question involved in the demurrer these allegations must be accepted as true. The point is that the duty of keeping the employés on the section informed as to the movement of trains over that section was a positive duty, devolved upon the company, and, where injuries are sustained by reason of negligence in the performance of that duty, the company is liable."

This decision is controlling upon this court. It would seem that in principle it decided the case at bar. If it was the duty of the railroad company to give notice of a temporary change in a time table, that was its duty as much as it was the duty to give notice to section hands in the last-named case of the running of trains. In this case it is apparent that the court held to the view that any positive duty of the master could not be delegated to a fellow servant of those operating trains, so as to escape liability for his negligence. Of course, the master in all cases is only required to exercise reasonable care depending always upon the circumstances of the case presented in performing those duties the law assigns him. But when he assigns his duties to another, that person acts for him as his agent, his representative, and he must be held responsible for his negligence. Under this rule the telegraphic operator Stuerer at Dillon must be considered as representing the company in the duty assigned him of giving notice of the temporary change of the time table, or in transmitting the notice intrusted to him to deliver to the conductor of train No. 5 of the change in the time table. In doing this duty he was not a fellow servant of those operating the road,

but a personal representative of the company, **for whose negligence the company was responsible.** The motion for a new trial is there-fore denied.