NORFOLK & W. RY. CO. v. HAZELRIGG.

(Circuit Court of Appeals, Sixth Circuit. April 19, 1909.)

No. 1,839.

1. PLEADING (§ 120*)—ANSWER—SUFFICIENCY OF DENIAL.

Under the rule of code pleading which prevails in Kentucky, an answer which confines itself to denying in ipsis verbis the allegations of the petition, and does not attempt to deny their substance or spirit, is bad as being evasive and tendering immaterial issues.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 120.*]

2. MASTER AND SERVANT (§ 296*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.

In an action by a brakeman against a railroad company to recover for an injury received while uncoupling cars used in interstate commerce, one of which was being moved with a defective coupler in violation of Safety Appliance Act March 2, 1893, c. 196, § 2. 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), it was error for the court to give a general instruction as to the effect of contributory negligence where the cars could have been uncoupled from the other side of the train without the necessity of going between them as plaintiff did.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 296.*]

3. TRIAL (§ 235*)—INSTRUCTIONS—WEIGHT AND SUFFICIENCY OF EVIDENCE.

Where defendant pleaded a release in defense to an action for a personal injury, it was not error to refuse an instruction that to overcome the strong presumption arising therefrom the plaintiff must produce evidence to convince the minds of the jury beyond reasonable controversy.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 235.*]

In Error to the Circuit Court of the United States for the Eastern District of Kentucky.

J. P. Holt and J. F. Hager, for plaintiff in error.

B. G. Williams, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and TAYLER, District Judge.

SEVERENS, Circuit Judge. This action was brought by Hazelrigg, the plaintiff below, for negligence resulting in the loss of an arm while in the employment of the railroad company, the plaintiff in er-

ror, as a brakeman in its yard at Williamson, W. Va., in October, 1905. The pleadings having been several times amended, a substitute for the original petition was filed by leave of the court, and a new answer was filed. In this petition the plaintiff alleged that at the time of the accident the defendant was hauling and using cars in interstate commerce which were not equipped with proper couplings, that they were not in good repair, the particular defect being that a certain coupling pin could not be lifted out of its place so that the cars could be separated without going between the cars. This, as appeared from the evidence given on the trial, was because the chain which connected the pin with the lever was either too long or was broken. The plaintiff further alleged that he was directed by the defendant to uncouple the cars, and, after having tried to uncouple them by using the lever, he went between the cars to uncouple them, and was caught between the ends of the cars and his arm was crushed; and that his injury was caused by the gross negligence and carelessness of the defendant in permitting the couplings to be and remain out of repair and in a dangerous condition. The answer denied the negligence charged to the defendant, and alleged that the accident happened through the negligence of the plaintiff. The cause was tried by a jury, and a verdict was given for the plaintiff.

At the close of the evidence, counsel for the defendant moved for an instruction to the jury that they should render a verdict for that party. This was refused, and an exception was taken. The errors assigned relate to this action of the court, and to the refusal of instructions and to instructions given.

We see no sufficient ground for the complaint that the court refused to give peremptory instructions to find a verdict for the defendant. There was evidence which tended, at least, to support the allegations of the petition. Whether the jury ought to have regarded it as satisfactory is not a question for us. One question of law, however, is presented in this connection. For the defendant it is contended that there was no evidence whatever that the car in question was being used in interstate traffic. The court held that it was not necessary for the plaintiff to prove that the car with the defective couplings was engaged in interstate commerce, because, as the court said, there was no issue raised upon that point by the pleadings. In this we think the court was right. The petition alleged that "the defendant was hauling and using in interstate commerce on its line at said place freight cars not equipped with couplers coupling automatically by impact, and which could not be uncoupled without the necessity of one going in between the ends of the cars." The answer of the defendant was that:

"It denies that, on or about November 2, 1905, it was hauling or using in interstate commerce on its line at Williamson, W. Va., freight cars not equipped with couplers coupling automatically by impact, or was so using cars which could not be uncoupled without the necessity of one going in between the ends of the cars."

This was a literal denial, and the rule of code pleading which prevails in Kentucky is that:

"An answer which confines itself to denying in ipsis verbis the allegations of the complaint, and does not attempt to deny their substance or spirit, is

bad as being evasive and tendering immaterial issues." 1 Encl. of Pl. § Pr. 798.

The instructions of the court were, as we think, in the main correct, and presented the case to the jury fully and fairly. With respect to the duty of the railroad company to equip its cars with automatic couplers and to maintain such equipment, and the duty of using all reasonable diligence in keeping the equipment in good order, the court charged the jury that the proper construction of the safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) was that which we have since approved in St. Louis & S. F. R. Company v. Delk, 158 Fed. 931, 86 C. C. A. 95, and in United States v. Illinois Cent. R. Company (a case decided at our March session) 170 Fed. 542. Of course, it follows that in that regard we must think the defendant at least has no ground for complaint.

There is, however, a single point on which we think the court below was in error. This was in its charge and refusal to charge concerning the subject of contributory negligence on the part of the plaintiff. The defendant requested the court to give the following instruction:

"The court further charges the jury that if they shall believe and find from the evidence that, at the time and upon the occasion of receiving the injuries sued for, the plaintiff was himself negligent, and by his own negligence contributed to the injuries sustained by him and sued for herein, and that, but for which negligence upon the part of plaintiff, if any there was, such injury could not have happened to or been sustained by him, then they must find for defendant."

This request was refused. The charge given was:

"Certainly it is no defense in this case that he was guilty of contributory negligence in attempting to make a coupling at all, because the statute expressly provides that, if the cars are not equipped as required, the employé does not assume a risk, and you cannot defeat him because of his going in between the cars by calling it contributory negligence. If he can be defeated on any claim of this sort of contributory negligence, it must be on the ground that he failed after he got in there, and whilst trying to make the coupling under those circumstances, to exercise such care as an ordinarily prudent person would exercise under like circumstances. I am going to let you pass on that question, although I say that I doubt whether there is any evidence to justify you in so finding. However, I will allow you to pass on it."

We think the instructions asked for should have been given, and that the instruction given was erroneous. It is apparent that the difficulty which the court had arose from a misconception of the nature and scope of the risks which the servant by the general rule assumes by his contract of employment, and from which section 8 of the safety appliance act relieves him. The assumption of those risks of the employment which are known to him, or would be known by the exercise of common intelligence, is a term of the contract with his employer, and continues to be so from the beginning. If a new risk becomes apparent, he may refuse to go on until it is removed. It is not a risk which he had assumed. If he does go on, he is deemed to have assumed the new risk also, and the original contract is modified to that extent, and the employer will understand that the employment is to continue upon the new conditions. The safety appliance act eliminates this element of assumption of risk from the contract of employment when the risk arises from the nonperformance of the duties im-

posed by the act upon the employer. Contributory negligence is a different matter. It consists of mutual faults, the concurrence of which causes the mischief. In a case like this the fault of the employer consists in the creation of, or permitting the continuance of, a condition of danger; the fault of the employé is that, seeing the dangerous condition, he does not conduct himself with reasonable prudence to avoid injury. His contributory negligence is wholly alien to the contract of employment. The contract is not affected by the circumstance of the accident. The latter is an incident occurring during its execution. What we have here said is authorized by the opinion of this court delivered by Judge Taft in Narramore v. Cleveland, C., C. & St. L. Ry. Company, 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68.

The artificial distinction between negligence on the part of the plaintiff in going in between the cars, and in what he did after going in, seems to have been taken in order to give place to the doctrine of the assumption of risk. But that doctrine, as we have seen, had no application to such conditions. We have spoken of the distinction taken by the learned judge as "artificial," by which we mean that we cannot see any reasonable ground for it. That the instruction may have been harmful is shown by the facts which appeared from the evidence, that upon the opposite side of the track was another lever on the end of the other of the coupled cars whereby this same coupling could have been unlocked, and that another employé was standing on that side of the train who could, and doubtless would, if requested, have unlocked the coupling by using the lever on that side. And, further, the conditions were such that, if the plaintiff must needs be the man to open the coupling, he might have passed around the rear of the train and used the other lever. The danger being so great that Congress had made special provision for it, it would seem there would be reason for thinking that the employé should appreciate the danger and take such measures for avoiding it as were available to him. For this error the judgment must be reversed.

Another question is presented by the record. It appears that directly after the injury the plaintiff was taken to a hospital provided by the defendant, where his arm was amputated, and where he remained and was taken care of for five or six weeks, until he was supposed to be recovered, and was discharged. An agent of the company agreed with him to pay him $25 in cash, to give him a pass over its own road and $2.75 for further transportation to his home, for any possible claim against the company he might have on account of the accident; and thereupon the plaintiff gave the defendant the following receipt:

"Know all men by these presents, that the undersigned, John T. Hazelrigg, yard brakeman, in consideration of the payment by the Norfolk & Western Railway Company, of the sum of twenty-seven 75-100 dollars, the receipt whereof is hereby acknowledged, do hereby release and discharge the said company from all liability for or on account of the matter described above.

"Witness my hand and seal, this 14th day of December, 1905.

"John T. Hazelrigg. [L. S.]."

The "matter described above" was the "personal injuries received by him" in the accident herein mentioned. The defendant set up this receipt and release as a sufficient discharge. The plaintiff replied, and

gave some evidence tending to show, that at the time of giving it he was without money or means of subsistence and had no suitable clothing; that he was worn down by suffering and was afflicted by a malady which affected his mind, and that he did not read the paper and did not know what he was doing when he made the settlement.

It would be of no use to express our opinion of this reply to the receipt. It is sufficient to say that there was some substantive evidence to support it, and, under the rule settled for this court, the verdict of the jury settles the fact. Upon the law regarding this question, the court charged the jury as follows:

"It is claimed that it was not his act and deed, because he did not have mental capacity sufficient to know that he was settling his claim, or to comprehend the nature of the settlement he made. If such was the condition of his mind at that time, that was not his act and deed, and he is not bound by it. If, however, he did have mental capacity to know it and realize that he was making a settlement, and to realize the nature of that settlement, he is bound by it, and there can be no recovery in this case. The fact that the plaintiff did not read it does not invalidate it, nor is it invalidated because it was an unfair bargain and defendant took advantage of him in obtaining it from him. His remedy to invalidate it on this ground was in equity, and he has not seen fit to seek that remedy. He has seen fit to say that he did not know the nature of it, and did not realize that he was settling his claims against the defendant, and that he did not have mental capacity sufficient to know what he was doing, and that such was not his act and deed. Of course, this is a good answer to the release, if it is true, and it is for you to determine that question."

It might be that there was error in what was here said about the necessity of resorting to equity in the case supposed (see Wagner v. National Life Ins. Company, 90 Fed. 395, 33 C. C. A. 121), but the defendant did not make this point. For the rest, it is substantially correct, and does not seem to be questioned. But the defendant requested an instruction respecting the burden of proof, and was entitled to an instruction upon that subject. The instruction prayed was this:

"The court charges the jury that the burden in this case rests on the plaintiff to overcome the strong presumptions arising from the terms of and his signature to the writing of December 14, 1905. read in evidence, and the jury, to overcome such presumption, must do so upon evidence convincing the minds of the jury beyond reasonable controversy."

This instruction the court was not bound to give. In the first place, it was not for the court to characterize the presumption as "strong" —its weight was for the jury; and, secondly, while it is often said in similar circumstances that the evidence must be convincing beyond a reasonable doubt, yet this is done rather as matter of advice to the jury than as an absolute direction. The action being a civil action, where a preponderance of evidence is sufficient, it was sufficient if the evidence, of which the presumption was a part, taken as a whole, preponderated in favor of the plaintiff. Whether in this regard it would have been erroneous to have given this instruction as a help to the jury in weighing the testimony, we need not determine.

There are no other questions of sufficient importance to merit discussion.

The judgment must be reversed, with a direction to award a new trial.