ALLEN et al. v. SOUTHERN CALIFORNIA RY. CO.

(Circuit Court, S. D. California. October 21, 1895.)

No. 605.

CITIZENSHIP—EVIDENCE.

One A., a resident of Missouri, in 1892 went to California, and began to work for the S. Ry. Co. In September, 1892, A.'s family, consisting of his wife and two children, followed him to California, his wife, before leaving Missouri, selling most of their household effects, except a few, which she took with her. A. rented and furnished a house in California, in which he resided with his family until his death, early in 1893. After A.'s death, his widow continued to reside in the same house for a month, and then hired another house in the same town, and began taking lodgers, and later hired a house in another town in California, where she continued taking lodgers. In 1893 she brought suit in a state court against

the S. Ry. Co., to recover damages for the death of her husband, which suit was tried in July, 1893, and she was defeated. In March, 1894, she returned to Missouri, but not to the place of her former residence, and remained away from California, visiting places in Missouri and Kansas, until August, 1894, when she returned to California. In April, 1894, she was appointed guardian ad litem of her children by a federal court in California, and suit was at once begun in that court against the railroad company. *Held,* that the facts were amply sufficient to justify a verdict that A.'s widow, at the time of bringing suit in the federal court, was a citizen of California, though she testified in terms that she was a citizen of Missouri, and that she had never intended to make her home in California, but always to return to Missouri.

This was a motion for a new trial. The action was brought by plaintiffs to recover damages for the death of their husband and father, alleged to have been occasioned by the defendant's negligence. Among the issues raised by the pleadings and submitted to the jury was that of the citizenship of the plaintiffs. One of the plaintiffs, Mrs. Allen, testified in terms that she and her minor children, the other two plaintiffs, were, at the commencement of the action, citizens of Missouri. On this issue of citizenship, the court instructed the jury as follows:

"(1) The plaintiffs, who are Ella Allen, the widow, and Edith May Allen and Earl Truman Allen, minor children, of Russel T. Allen, deceased, have brought this action to recover of the defendant, the Southern California Railway Company, damages for the death of said Russel T. Allen.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"(4) The pleadings have raised a preliminary issue affecting the jurisdiction of the court, which will first claim your attention. To the maintenance of this action, diverse citizenship of the parties is essential; in other words, and more specifically, this court, being a federal court, is without jurisdiction unless, at the commencement of the action, June 18, 1894, plaintiffs were citizens of the state of Missouri, and the defendant a citizen of the state of California. A corporation, within the meaning of the law, is a citizen of the state where created, and there is no question in this case but that the defendant is a citizen of the state of California. The jurisdictional issue relates to the citizenship of the plaintiffs, and is whether or not, at the commencement of the action, they were citizens of the state of Missouri. On this branch of the case the court instructs you that during the lifetime of the deceased, Russel T. Allen, the citizenship of all the plaintiffs was determined by his citizenship, and that since his death the citizenship of the minor children of himself and plaintiff Ella Allen must be determined by her citizenship.

"(5) The court further charges you that, to constitute a person a citizen of a particular state, such person must have his or her actual residence therein, with the intention that it is to be a permanent residence. If, therefore, you believe from the evidence that the deceased, Russel T. Allen, when he came to San Bernardino, California, in 1892, came for a temporary purpose (for instance, on account of his wife's ill health), and did not intend to make his permanent residence in this state, but intended eventually to return to Missouri as the place of his permanent residence, and that there was never any change on his part of such intention, and that Ella Allen, the widow of said deceased, after his death, and until the commencement of this action, all along had the same intention as to her permanent residence; or if you believe from the evidence that said widow, when she went back from California to Missouri, in March, 1894, although her citizenship at that time may have been in California, and her motive was to give jurisdiction to the federal courts, took up her actual residence in Missouri, with the intention that such residence should be permanent, you will find that plaintiffs were citizens of Missouri at the commencement of this action, and your verdict will be in their favor on this issue. If, however, you believe from the

evidence that said deceased, when he came to San Bernardino, California, in 1892, had, or at any time thereafter formed, the intention to make his permanent residence in California, or if you believe from the evidence that said widow, while residing in California, at any time after the death of said Russel T. Allen and prior to the commencement of this action, intended that her residence in California should be permanent, and that said return to Missouri of said widow in March, 1894, was not a bona fide removal, as hereafter explained, then you will find for the defendant on the issue of plaintiffs' citizenship; that is, that plaintiffs were not citizens of Missouri at the commencement of the action.

"(6) The court has instructed you that, if said widow of the said deceased, when she went back to Missouri, in March, 1894, although she may have then been a citizen of California, did so with the intention of making her permanent home in said state of Missouri, and took up her actual residence there, then such removal, whatever may have been the motive which prompted it, was bona fide, and plaintiffs thereby became citizens of Missouri. In this connection, however, the court further instructs you that, if said widow went back to Missouri at the time mentioned in order to enable plaintiffs to avail themselves of the jurisdiction of the federal court, and not intending to reside permanently in Missouri, but intending, for that purpose, to return eventually to California, then such removal was not bona fide, but a fraud upon the law, and plaintiffs would not thereby become citizens of Missouri.

"(7) If you find that the plaintiffs were not citizens of Missouri at the commencement of the action, your verdict will be that you find for the defendant on the issue of the citizenship of the plaintiffs, and in that event you need not make further findings. If, however, you find," etc.

On this issue, the verdict of the jury was for the defendant. The other facts are stated in the opinion of the court.

Murphey & Gottschalk and Harris & Vickery, for plaintiffs.
W. J. Hunsaker, for defendant.

WELLBORN, District Judge (after stating the facts). The grounds of this motion, as argued in the briefs of the respective parties, are: First, insufficiency of the evidence to justify the verdict; second, misconduct of defendant's attorney in his argument to the jury. Among the grounds formally stated in the notice of motion is also that of newly-discovered evidence. This ground, however, is not urged by plaintiffs in their brief, and, I presume, for the reasons that the evidence referred to is largely cumulative, and besides there is no showing that any diligence was used to produce it upon the trial.

Under the first of the two grounds above stated, namely, insufficiency of the evidence to justify the verdict, plaintiffs contend that the diverse citizenship of the parties, or, more specifically, the citizenship of plaintiffs in Missouri, was prima facie established, and there was nothing in rebuttal, and therefore the verdict was against the strength or weight of the evidence. If the premises indicated are correct, the conclusion stated necessarily follows. The salient inquiry, therefore, is, did the plaintiffs establish, prima facie, this branch of their case, and was there an absence of rebutting testimony? Citizenship, it must be remembered, is a mixed question of law and fact, and not unfrequently complicated and difficult of solution. In such cases the testimony of a party, however honestly given, that his or her citizenship is in a certain state, such testimony

being, not the statement of a simple fact, but an ultimate conclusion, involving the construction and application of legal rules, is far from being conclusive, when the particular facts upon which the citizenship depends are in evidence. The jury, therefore, were not bound to accept and act upon Mrs. Allen's statement that she and her children, at the commencement of this action, were citizens of Missouri; on the contrary, it was their right and duty to find upon the issue of citizenship from all the evidence in the case. The first question for their determination was whether or not there had been a transfer of plaintiffs' citizenship from Missouri to California. On this question they could hardly have done otherwise than find affirmatively. The pertinent facts are these: The deceased, with his family, consisting of his wife and two minor children, the plaintiffs herein, resided in Kansas City, Mo., prior and up to August 1, 1892. On that day he left Kansas City for San Bernardino, Cal., and on the 16th of the same month went to work for the defendant in its yard at the last-named place. His family left Kansas City on the 22d of September, same year, and reached San Bernardino during the latter part of the same month. Before she left Kansas City, Mrs. Allen, or she and the deceased, sold most of their household effects, retaining only such as were brought to California, and a few articles which were sent to his mother's house, in Mosby, Mo., at which place, however, they had never resided. At San Bernardino the deceased rented and furnished a house, which his family, upon their arrival, occupied. The employment he procured of the defendant in San Bernardino was similar to that which he had exercised for years before in Missouri. Thus he lived and worked in San Bernardino for five months, and up to the time of his death. None of these circumstances indicate a temporary, but, on the contrary, they all point to permanent, residence. Nor is there in the evidence, laying aside Mrs. Allen's general statement as to plaintiffs' citizenship, any thing contradictory of this conclusion. It is true that Mrs. Allen in one place testifies, "I had always intended to go back to Missouri"; and in another place, speaking of her return to Missouri, she says, "I made no visit; I simply went home"; and in another place, referring to her testimony in the state court, she says that she then testified that her residence was in San Bernardino, and, continuing, "but I didn't consider that my home." These statements, however, even were they unchallenged,—which, as will appear later on, is not the case,—fail to establish that the citizenship of plaintiffs was not transferred to California, for the obvious reason that this transfer depended, not upon her intention, but upon that of her husband; and nowhere in her testimony does she state what his intention was. If, when his family came to San Bernardino, it was the intention of the deceased to permanently remain in California, he and they became citizens of said state. There is no direct testimony by Mrs. Allen as to what was the deceased's intention, and it must, therefore, be inferred from all the facts of the case; and these facts, as I have just shown, concurrently point to an intention on the part of the deceased to make his permanent home in California.

Assuming, then, that the evidence shows a transfer of plaintiffs' citizenship from Missouri to California, the next question is whether their citizenship was changed back to Missouri before the commencement of this action, and here the controlling fact is the intention with which Mrs. Allen returned to Missouri in March, 1894. On this point the extracts from her testimony, which I have already quoted, are to the effect that she always intended to go back to Missouri, and never ceased to consider that state her home. Did these statements establish a prima facie case against which there was no rebutting testimony? To my mind, clearly not. The statements are antagonized by nearly all the facts to which she testified touching her removal to California, residence therein, return to and stay in Missouri, and subsequent return to California. Among these facts are the following: Abandonment by the deceased and his wife of the home they occupied in Kansas City, and sale of the most of their furniture; the renting and furnishing of a house in San Bernardino, and its occupancy by deceased and his family; and his procurement of and continuance in railroad work there, up to the time of his death. These facts are supplemented by others, viz.: After Mr. Allen's death, Mrs. Allen resided in the same house for a month, at the expiration of which time she rented the Eureka Lodging House, containing 22 rooms, in San Bernardino, and prosecuted business therein for several months. Some time in the year 1893, and prior to the month of July, she brought suit on this same cause of action in the state court at San Bernardino, and the suit was tried at that place during said month of July. Thereafter, and in August of the same year, Mrs. Allen removed to Los Angeles, and for more than six months was there engaged in keeping a lodging house in the Vickery Block, on Main street. She then rented a house on Buena Vista street, and bought furniture for the same, and remained there for two weeks, before her return to Missouri, leaving her father and mother in said house. In March, 1894, she went back to Missouri, to Mosby, the home of her mother-in-law, a place where neither she nor her husband had ever before resided. After an absence from California of four or five months, she returned, in August, 1894, and continuously resided here up to the time of this trial. Nor do the circumstances attending her absence from California indicate a permanent residence elsewhere. During this period, she visited at several places, not only in Missouri, but Kansas. Shortly after leaving California—April 30, 1894—she was appointed guardian ad litem of her minor children, for the purpose of this action. May 21, 1894, the complaint was verified by her in the county of Doniphan, state of Kansas. August 4, 1894, she returns to Los Angeles, goes back to the house on Buena Vista street, at which she was staying when she left in March, and resides there, with her father and mother, from that time up to the trial, last April; her father and mother all the time being residents of this city. On the trial in the state court, she testified that her residence was at San Bernardino, making no reference whatever to the qualification suggested by her on this trial, that such residence was only temporary. To say that these circumstances do not point to

the conclusion that she intended permanently to live in California, is simply to ignore and disregard the teachings of all experience, because such circumstances are the usual accompaniments of permanent, but not temporary, residence. In this connection it is worthy of notice that the supreme court of California, in one case, where the intention with which a party executed a deed was the pivotal point, held that the party could not testify as to what his intention was, but that his intention must be deduced from his acts and declarations at the time. Woods v. Whitney, 42 Cal. 362. In this case, the court says:

"There was no error in excluding the questions propounded by the defendant at the time of the execution of the deed to the plaintiff. It was for the court to decide upon his intentions from his acts and conduct at the time. His secret, undisclosed intentions would be unavailing as against his acts and declarations at the time of the transaction."

In another California case, where one of the questions involved was whether or not a mining claim had been abandoned, and the claimant's intention was the controlling fact, he was permitted to testify what his intention was: but Justice Ross, now the United States circuit judge for this circuit, delivering the opinion of the court, said:

"Abandonment is a question of intention, and of this intention the jury were to judge, and did judge, in view of all the facts and circumstances of the case. It is true, as stated in the brief of counsel for appellants, that Leathe testified at the trial that there was no intention by him or his colocators to abandon the claims. But his testimony to that effect was not conclusive upon the jury. If that was so, it would follow that all any party would have to do, in order to defeat the defense of abandonment, would be to say he did not intend to abandon. The intention, however, is to be derived, as already observed, from all the facts and circumstances of the case. Considering those facts and circumstances, the jury found for the defendants, and we cannot disturb the verdict on that ground." Myers v. Spooner, 55 Cal. 260.

See, also, French v. Foley, 11 Fed. 801.

The case of Ennis v. Smith, 14 How. 400, cited in plaintiffs' brief, does not bear upon the question of the weight which a party's testimony, as to his intention, should receive, but simply holds that the prior declarations of the party are competent, "especially when made previous to the event which gave rise to the suit."

Clearly, plaintiffs did not have a prima facie case, uncontradicted by rebutting testimony. Many facts, testified to by Mrs. Allen herself, as I have already shown, tended to contradict her statement that she always purposed going back to Missouri. On this point the supreme court of the United States have said:

"Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness," etc. "He may be contradicted by the facts he states as completely as by direct adverse testimony," etc. Quock Ting v. U. S., 140 U. S. 501, 11 Sup. Ct. 733, 851.

Under the rule here enunciated it is impossible to do otherwise than conclude that the verdict was not against the strength or weight of the evidence.

With reference to the second ground of the motion, to wit, misconduct of defendant's attorney, it is only necessary to say that no exception was reserved or taken at the trial, and therefore this matter, according to the procedure indicated in rule 23 of this court, and approved by most of the authorities, is closed to review. Crumpton v. U. S., 138 U. S. 361, 11 Sup. Ct. 355; Waldron v. Waldron, 156 U. S. 361, 15 Sup. Ct. 383; Chandler v. Thompson, 30 Fed. 38; Skaggs v. Given, 29 Mo. App. 612; People v. Shem Ah Fook, 64 Cal. 383, 1 Pac. 347; Bradshaw v. State, 17 Neb. 147; 22 N. W. 361. From this procedure there is no reason to depart in the present case, particularly in view of the opinion which I have expressed as to the sufficiency of the evidence to sustain the verdict. Motion for new trial denied.