## GRAVES v. SANDERS et al.

(Circuit Court of Appeals, Ninth Circuit. September 14, 1903.)

### No. 904.

1. ATTORNEY AND CLIENT—CHARACTER OF SERVICES—MEASURE OF COMPENSA-TION—AMOUNT INVOLVED—EVIDENCE.

Where attorneys were employed by defendant, who was a prospective purchaser of a mine, to render services, both professional and nonprofessional, in examining the articles of incorporation of the corporate owner of the mine, and also to pass on the value of the mine, etc., the admission of evidence in an action for the reasonable value of such services as to the value of the mine, the value of its production, and the value of the capital stock of the corporation, was not error, especially in view of a charge that it could be considered only for the purpose of determining the amount involved in the transaction, and the results obtained to determine the nature of the responsibility assumed by plaintiffs, and the reasonable value of their services.

2. SAME—NEW TRIAL—REVIEW.

The denial of a motion for a new trial by the Circuit Court cannot be reviewed by the Circuit Court of Appeals.

In Error to the Circuit Court of the United States for the District of Montana.

For opinion below, see 105 Fed. 849.

This is an action to recover the sum of $25,000 for and on account of advice given and professional services rendered by the defendants in error as attorneys at law, and for other services by them rendered, at the alleged special instance and request of the plaintiff in error, in and about examining, ascertaining, and reporting the title to, and the quality, character, and value of a quartz mine in Montana. The action was commenced in the District Court of the First Judicial District of the state of Montana, in and for the county of Lewis and Clarke, but, upon petition of the plaintiff in error (defendant below), was removed to the Circuit Court of the United States, Ninth Circuit, District of Montana, by reason of the diverse citizenship of the parties. The plaintiff in error entered a general denial of the allegations of the complaint. Evidence was introduced on behalf of the defendants in error (plaintiffs below), but none in behalf of the plaintiff in error. The trial resulted in a verdict in favor of the defendants in error in the sum of $4,000, and judgment was entered accordingly. To reverse this judgment, a writ of error was sued out to this court.

E. B. Howell and Clayberg & Gunn, for plaintiff in error.

J. A. Walsh and W. F. Sanders, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. The assignments of error relate to the admission of certain testimony, the refusal to give certain requested instructions to the jury, and the refusal to grant a new trial. The testimony in question related to the value of the services rendered by the defendants in error, consisting of professional services as attorneys and counselors at law, and other services rendered in and about examining, ascertaining, and reporting the title to, and the quality, character, and value of, a certain quartz mine situated in Jefferson county, Mont., known as the "Ruby Mine," and mill connected therewith, and the condition of the property, and its value,

production, contents, and promise, with a view to the loaning of money on, and the purchase by the plaintiff in error of, the stock of the Gold Mountain Mining Company, the owner of the mine and mill.

It is contended by the plaintiff in error that the services upon which recovery is sought were not legal or professional in their nature, and that the principles of law applicable to the determination of the reasonableness of attorneys' compensation do not govern here; that no consideration should be given to the value of the property involved, or the profit realized or loss suffered by the plaintiff in error, but merely to the worth of the services rendered, independent of other considerations. The testimony on behalf of the defendants in error tended to show that the services rendered by them were worth $5,000, but it was not claimed that all the services rendered were strictly of a professional character.

It appears further from the testimony on behalf of the defendants in error that on July 30, 1897, the plaintiff in error, without any previous arrangements with or notice to the defendants in error, telegraphed from New York to the defendants in error, at Helena, Mont., where they were engaged in business as attorneys at law, asking information about one Hewitt and his mines at a certain locality in Montana. This information was sent by telegram and letter, and, in accordance with telegraphic directions from the plaintiff in error, the defendants in error selected one James E. Sites, described as a "practical, honest miner," to visit the mining property in question and examine it, and they thereafter transmitted his report to the plaintiff in error. It appears that the plaintiff in error became financially interested in the property, and in August and September of the same year telegraphed the defendants in error for further information, and asking that the same man who had previously examined the property should make further reports of its then condition; that such reports were made to the defendants in error, and by them put into shape and transmitted to the plaintiff in error. It does not appear that any further services were rendered after September. In the correspondence and telegrams which passed between the parties, and are introduced in evidence, no mention is made of fees or compensation for services. The bills of Sites, who examined the property, are in evidence; and it is testified that they were paid by the defendants in error, and the amounts collected by them from the plaintiff in error. One of the defendants in error, at least, appears to have been a friend of the plaintiff in error, but it is not apparent from the correspondence whether the services requested were because of the friendship existing, or because professional services were required. It is testified that one of the defendants in error went to the office of the Secretary of State and examined the articles of incorporation of the mining company whose stock the plaintiff in error was purchasing, but, other than this, the services rendered seem to have consisted of the obtaining of information from persons familiar with the mine, the sending of a man to examine the mine, and in preparing and transmitting his reports. The plaintiff in error invested some $15,000 in the mine, according to the testimony, for which he received 150,000 shares,

and there is some testimony to the effect that he afterwards purchased 50,000 shares in addition; making 200,000 shares of the 300,000 shares of the capital stock of the company. The reports sent to him by the defendants in error were favorable in character, and it is apparent from the correspondence that the plaintiff in error relied upon the information received from the defendants in error, and expected them to look out for his interests in the matter. Testimony was introduced to the effect that at one time, after the plaintiff in error had purchased this stock, offers were made for it of from $1 to $1.50 per share. Whether he sold any of his stock or not, or whether he made or lost on the entire transaction, is not shown, although, according to the testimony, the stock had little, if any, value at the time of the trial. The plaintiff in error does not deny that the defendants in error rendered the services stated, but he contends that they are entitled to merely the reasonable worth of the services, independent of any consideration of the value of the property involved, or the benefit resulting to the principal or employer. The rule governing cases of this character is stated very clearly by Mr. Justice Field in Forsyth v. Doolittle, 120 U. S. 73, 74, 7 Sup. Ct. 408, 30 L. Ed. 586. In that case an attorney sued to recover compensation for his services, not only as an attorney in defending a foreclosure suit, but for his services in negotiating a sale of property. The court held that evidence of the value of the property involved was admissible, and, with regard to compensation for the services rendered, said:

"The services for which compensation is sought were not only those required of attorneys and counselors at law, but were also those of negotiators seeking to accomplish the result desired, by consultation with proposed purchasers, and presentation to them of the advantages to be derived from the property, present and prospective. Varied as were the legal services of the plaintiffs, it is plain from the testimony that those rendered by negotiation and consultation, and presentation of the uses to which the property could be applied, were far more effective and important. This fact necessarily had a controlling weight in estimating the value of the services. It is difficult to apply to such services any fixed standard by which they can be measured, and their value determined, as can be done with reference to services purely professional. There is a tact and skill and a happy manner with some persons, which render them successful as negotiators, while others, of equal learning, attainments, and intellectual ability, fail for the want of those qualities. The compensation to be made in such cases is, by the ordinary judgment of business men, measured by the results obtained. It is not limited by the time occupied or the labor bestowed. It is from overlooking the difference in the rule by which compensation is measured in such cases, and that in cases where the services are strictly of a professional nature, that several objections are urged for reversal of the judgment recovered."

The court below in the present case instructed the jury that testimony relative to the value of the mine, the value of its production, and the value of the capital stock of the mining company, could be considered only for the purpose of determining the amount involved in the transaction, and the results obtained, to determine the nature of responsibility assumed by the defendants in error, and the reasonable value of their services. Under the rule above announced by the Supreme Court, there was no error in admitting the testimony

objected to, especially with the explanation as to its weight contained in the instruction.

Further error is specified in the refusal of the court to give certain instructions requested by the plaintiff in error. Without going into detail, we are of the opinion that the instructions given covered the matter of the refused instructions, and in quite as favorable a form to the plaintiff in error as to the defendants in error.

With regard to the error assigned in the refusal of the court to grant a new trial "because the damages are excessive, and the verdict appears to have been rendered under the influence of passion and prejudice," it is sufficient to say that a motion for a new trial cannot be reviewed by this court. N. P. Ry. Co. v. Charless, 51 Fed. 562, 2 C. C. A. 380; G. N. Ry. Co. v. McLaughlin, 70 Fed. 669, 676, 677, 17 C. C. A. 330; Sun Printing & Publishing Ass'n v. Schenck, 98 Fed. 925, 40 C. C. A. 163; Laber v. Cooper, 7 Wall. 565, 19 L. Ed. 151; Railroad Co. v. Winter's Adm'r, 143 U. S. 60, 70, 12 Sup. Ct. 356, 36 L. Ed. 71; City of Lincoln v. Power, 151 U. S. 436, 14 Sup. Ct. 387, 38 L. Ed. 224.

There being no error apparent in the action of the court upon the trial, and no showing that the procedure was not in every respect regular, whatever may be the opinion of the appellate court as to the amount of the verdict, it must affirm the judgment.