TOLEDO, ST. L. & W. R. CO. v. HOWE.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1911.)

No. 2,112.

1. APPEAL AND ERROR (§ 989*)—REVIEW—VERDICTS—SUFFICIENCY OF EVIDENCE.

An appellate court of the United States cannot weigh the evidence to determine whether or not it is sufficient to sustain a verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3897; Dec. Dig. § 989.*]

2. TRIAL (§ 139*)—TAKING CASE FROM JURY—POWER OF COURT—SUFFICIENCY OF EVIDENCE.

A motion by a defendant for a directed verdict must be overruled where the evidence presented by the plaintiff, if believed by the jury, will sustain the cause of action.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332–341, 365; Dec. Dig. § 139.*]

3. TRIAL (§ 139*)—DIRECTION OF VERDICT—POWER OF COURT.

The evidence to warrant the submission of a case to the jury must be substantial in character, leading logically to a conclusion favorable to the plaintiff, and not merely such as to give rise to conjecture or guessing or to involve the weighing of probabilities.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332–341, 365; Dec. Dig. § 139.*]

4. TRIAL (§ 178*)—DIRECTION OF VERDICT—DETERMINATION ON MOTION.

In considering a motion for a directed verdict, the trial judge should not draw conclusive inferences from the proof against the plaintiff in matters which may be subject to reasonable explanation, or exclude from consideration an explanatory hypothesis favorable to the plaintiff and sustained by the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 401–403; Dec. Dig. § 178.*]

5. TRIAL (§ 139*)—DIRECTION OF VERDICT—GROUNDS.

A case should be submitted to the jury, unless as a matter of law no recovery could be had upon any view which could properly be taken of the facts the evidence tends to establish.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332–341, 365; Dec. Dig. § 139.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6. NEGLIGENCE (§ 136*)—ACTIONS FOR NEGLIGENCE—WHEN QUESTION FOR JURY.**

In cases of negligence, where uncertainty exists due to conflicting evidence or from inferences to be drawn from established facts, the question is one of fact, and, if the circumstances are such that it can be said fair-minded men might not agree as to the conclusions to be drawn, the case must be submitted to the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–306; Dec. Dig. § 136.*]

**7. MASTER AND SERVANT (§ 286*)—ACTION FOR DEATH OF BRAKEMAN—QUESTIONS FOR JURY.**

Evidence considered in an action against a railroad company to recover for the death of a brakeman who was killed while coupling cars on a switch track, and the case *held* to have properly been submitted to the jury where the issues were as to the negligence of defendant in maintaining a guard rail 3 or 3½ inches from the used rail, without blocking, and whether deceased caught his foot in the space, and was thereby prevented from getting out of the way of the moving cars by which he was run over.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010–1050; Dec. Dig. § 286.*]

**8. APPEAL AND ERROR (§ 242*)—PRESENTATION AND RESERVATION IN LOWER COURT OF GROUNDS OF REVIEW—ARGUMENT OF COUNSEL.**

An assignment of error based on alleged improper remarks by counsel in argument to the jury cannot be considered by an appellate court where no ruling was asked from the trial court as a basis for an exception.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1417–1425; Dec. Dig. § 242.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Action at law by Willis R. Howe, administrator of the estate of Silas L. Hollopeter, deceased, against the Toledo, St. Louis & Western Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Action by administrator for damages for alleged wrongful death.

Silas L. Hollopeter, 21 years of age, industrious and in good health, had been in the employment of the railroad company as brakeman for several days prior to the day of the accident which resulted in his immediate death. He took care of his mother, and out of his earnings paid off an indebtedness of $300 on her farm. At the time of his death he was capable of earning from $70 to $75 per month. On September 21, 1906, he was working upon a local freight train of defendant, which was engaged in switching freight cars at Ohio City, Ohio, from defendant's tracks to the tracks of the Erie Railroad, over a Y track connecting the two. The connecting track was sharply curved, running generally in an easterly direction from the defendant's tracks to the Erie track, and each rail was protected by two guard rails, one on either side of the main rail. The northerly guard rail of the southerly rail was from 3 to 3½ inches from the southerly rail. There was no blocking of any kind between the rail and the guard rail.

The train was operated by an engineer, a fireman, a brakeman named Garee, and the decedent. The engine was headed toward the west. Prior to the accident two cars had been backed and "kicked" from the train eastwardly onto the Y toward the Erie track, and had come to a stop. The westerly car was a "Pennsylvania" car. In continuing the switching to be made the train, then consisting of three cars besides the locomotive, backed

toward the Pennsylvania car. The last two cars were kicked toward the Pennsylvania car. The car at the end of the train was an Erie gondola car, and the operation in which Hollopeter was killed was for the purpose of coupling the Erie car to the Pennsylvania car. The cars coming together failed to become coupled, and on the rebound were from four to six feet apart. Hollopeter had been on the Erie car and got off on the south side, and after the rebound of the cars was seen to reach in between them for the purpose of opening the knuckles of the couplers by hand. Garee was on the north and convex side of the track and train, and could not see Hollopeter.

Just when Hollopeter got off the Erie car does not appear, but it was his duty to couple the cars. The Erie car was not equipped with an automatic coupler. It had a lever at the end reaching out to the side on which Hollopeter was for the purpose of operating the coupler on the car. While the lever would operate the coupling pin, it would not operate the coupler itself, and it was necessary for Hollopeter to go between the cars and adjust the coupler. He was known as the field man, whose duty it was to signal to the fireman, whose place was on that side of the train, who, in turn, would notify the engineer, who would then proceed to make such movement with the engine as would accord with the signal given by Hollopeter. When the cars failed to couple, Garee signaled the engineer, whose place was on that side of the train, to back up, so that the coupling could be made. Garee was some distance away from where the coupling was to be made, and it was not his duty at that time to make, or assist in making, the coupling, or to give signals for the movement of the engine. In response to Garee's signal, the engineer backed the train very slowly, and Hollopeter was killed. After the accident his right foot and leg, almost to the knee, were found between the main southerly rail and its northerly guard rail. The foot was pointed westwardly, and the shin was up, with some indication of being twisted northwardly. The body was across the track. The head pointed in a southeasterly direction. The wheels of the easterly truck and the first wheel of the other truck had run over him. The other wheel of that truck stopped on his body. He was seen struggling after the first wheels passed over him.

The only eyewitness was J. C. Pennell, who at that time was car inspector for the Erie Railroad. He was sitting in the car inspector's shanty about 300 feet away. He could not say whether he had noticed the two cars, one of which was the Pennsylvania car, standing on the Y.

He testified, among other things, as follows: "A. I saw two cars moving down the track slowly and Mr. Hollopeter stepped between the cars to make a coupling, and apparently— A. I saw Mr. Hollopeter step between the cars, and apparently his foot was— A. He reached for the next car to keep from falling as the Erie car started. The Court: The conclusion as to why he did it is perhaps subject to objection. You may state what you saw him do and what attitude he was in. A. Well, he stepped to the end of the car. Q. Which car was it? A. The Erie car. Q. And was that moving or not at that time? Mr. Schmettau: We object, because of the admission and stipulation that that car was standing still. Q. What movement did you see him make with his hands and feet, just describe that? A. He stepped either on or between the rails to reach the knuckle to open it, put the left hand on the corner or on the operating lever to raise the lock. I couldn't say which it was, whether it was on the corner of the car or the operating lever. And the car struck him, and he tried to get out and reached for the next car to keep from falling, and, while he was out of sight, why the first two wheels passed over him. After they passed over him he struggled to get out from under the car. The next truck run, the first wheel run over him, and the next wheel—that is, the fourth wheel—stopped on his body. Q. Now at the time you saw him reach toward this knuckle, and before he appeared to·fall, what, if any movement, did you notice of his legs and feet, before the car struck him, I mean? A. Well, just as the car did strike him it looked like he tried to get away. Q. Just describe his movements. What indicated that to you? The Court: Wasn't that after he was down? Do you mean after he was or still standing? A. He was still standing. He reached for the next car. Q. Before he was struck? A. Well, just as he was struck. Apparently just as he stepped in between the cars the car was struck, or moved

at least, and he fell and the wheels passed over him.  Q. Where did you find his leg, after this, and foot?  A. Between the main rail and the guard rail. Q. How was it fastened, if at all?  A. Well, it was crushed in between the rails.  Q. Securely fast there or not?  A. Yes, sir.  Q. Previous to the time the car struck him, you may state whether you saw him make any movements to get out or reach toward the other car?  A. No, sir.  He reached at the time he fell; well, almost the same time the car was struck."

Hollopeter gave no signal to the fireman.  The claim of the administrator was based on the alleged negligence of the defendant, in that it violated the statute of the state of Ohio, and the statute of the United States, in failing to have the cars in the train equipped with couplers, coupling automatically by impact, and which could be coupled without the necessity of a man going between the ends of the cars; and was also based on the alleged negligence of the defendant at common law, in maintaining the guard rail so close to the main rail, and in such position that the brakeman's feet were liable to be caught between the rails, and he would be exposed thereby to the danger from moving cars, and that the defendant failed to fill or block the space between the rails for the purpose of preventing the foot being caught between them.

The only question touching the defendant's negligence submitted to the jury was whether the defendant was negligent at common law.

At the close of the evidence defendant moved for an order instructing the jury that, under the pleadings and the evidence, the plaintiff was not entitled to recover.  After a careful and elaborate charge the jury returned a verdict for $3,500.  Defendant's motion for a new trial was overruled.

The assignments of error are numerous, but the three errors relied on, as stated in the brief of counsel for defendant, are dealt with in the opinion. The remarks of counsel to which objection is made, but upon which no ruling of the court was asked as a basis for an exception are:

"Now, gentlemen of the jury, it seems to me there is nothing in this case except how much shall be awarded.  The statutes of Ohio do not contemplate or make it necessary that you should get down and figure dollars here and dollars there and add them up.  But you have a wide discretion left to you to your judgment as to what in all likelihood must have been the assistance and help which he would have contributed to his mother.  And let me also say to you, gentlemen, in awarding this amount, I would like to have you keep in mind that it is not in the power of the court to increase it.  Your judgment of the amount cannot be increased $1.  I don't say this to you with the view that you make it excessive—

"Mr. Schmettau: We object to this as improper argument.

"Mr. Thatcher (continuing): But I want to impress upon you the fact that under the jurisdiction, and in this court where you are sitting, questions of fact of this character are particularly for you to decide, and your verdict in that respect is likely to be final."

Before submission the charge of contributory negligence was withdrawn. No claim is made in the argument or in the brief of counsel for plaintiff in error that Hollopeter assumed the risk of his employment, and no exception was taken by either party of the assumption in the charge that defendant's servants, the engineer, and the brakeman, Garee, were negligent and were fellow servants of Hollopeter.

Charles A. Schmettau (Lloyd T. Williams and Clarence Brown, on the brief), for plaintiff in error.

C. A. Thatcher, for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and HOLLISTER, District Judge.

HOLLISTER, District Judge (after stating the facts as above). Counsel for defendant, complying with rule 24 (150 Fed. xxxiii, 79

C. C. A. xxxiii) of this court, sets out in his brief the errors relied on by him:

(1) Error in overruling plaintiff in error's motion for a peremptory instruction.

(2) Error in closing argument of counsel for defendant in error.

(3) The verdict and judgment are against the law and the evidence.

[1] By the third alleged error relied on, defendant would have this court review the evidence to ascertain whether the verdict was against the evidence or not. To determine that question, it would, of course, be necessary to weigh the evidence. An appellate court of the United States does not weigh the evidence. The reason is found in the Constitution (amendment 7), which provides that:

"No fact tried by a jury shall be otherwise re-examinable in any court of the United States, than according to the rules of the common law."

In Parsons v. Bedford, 3 Pet. 433, 447, 448 (7 L. Ed. 732), Mr. Justice Story says of this amendment:

"This is a prohibition to the courts of the United States to re-examine any facts tried by a jury in any other manner. The only modes known to the common law to re-examine such facts are the granting of a new trial by the court where the issue was tried, or to which the record was properly returnable; or the award of a venire facias de novo, by an appellate court, for some error of law which intervened in the proceedings."

It has accordingly been held in many cases that the inquiry ends with the ruling of the trial judge on a motion for a new trial, and in cases in which no motion for a new trial was filed, and reversal was sought directly by proceedings in error, that the weight of the evidence was a matter which appellate courts of the United States have no power to consider. Parsons v. Bedford, 3 Pet. 433, 448, 449, 7 L. Ed. 732; Railroad Co. v. Fraloff, 100 U. S. 24, 31, 25 L. Ed. 531; Ætna Life Ins. Co. v. Ward, 140 U. S. 76, 91, 11 Sup. Ct. 720, 35 L. Ed. 371; Lincoln v. Power, 151 U. S. 436, 438, 14 Sup. Ct. 387, 38 L. Ed. 224; Erie R. R. Co. v. Winter, 143 U. S. 60, 75, 12 Sup. Ct. 356, 36 L. Ed. 71; Shauer v. Alterton, 151 U. S. 607, 626, 14 Sup. Ct. 442, 38 L. Ed. 286; Davidson S. S. Co. v. United States, 205 U. S. 187, 192, 27 Sup. Ct. 480, 51 L. Ed. 764; Herencia v. Guzman, 219 U. S. 44, 45, 31 Sup. Ct. 135, 55 L. Ed. 81; Graves v. Sanders, 125 Fed. 690, 693, 60 C. C. A. 422; Illinois, etc., R. Co. v. Davies, 146 Fed. 247, 248, 76 C. C. A. 613; Mutual, etc., Co. v. Heidel, 161 Fed. 535, 538, 88 C. C. A. 477.

The whole matter is comprehensively put by Mr. Justice Hughes in Herencia v. Guzman, 219 U. S. 44, 45, 31 Sup. Ct. 135 (55 L. Ed. 81):

"The argument on behalf of plaintiff in error proceeds upon the assumption that this court may review the evidence as to negligence and as to the damages recoverable, and may reverse the judgment if the court is dissatisfied with the findings of the jury. This, however, is not the province of the court upon writ of error. As there was evidence proper for the consideration of the jury, the objection that the verdict was against the weight of the evidence or that the damages allowed were excessive cannot be considered."

There is no aspect in which the verdict and judgment are presented in the argument or in counsel's brief, or otherwise, as contrary to

law, excepting the statement that they were, and that the court erred in overruling the motion for a directed verdict, and that there was misconduct on the part of counsel for the plaintiff in the manner alleged.

The Circuit Court of Appeals for the Seventh Circuit, in applying rule 11 (150 Fed. xxvii, 79 C. C. A. xxvii) of the Circuit Courts of Appeals, disregarded assignments of error that the judgment was contrary to the law and contrary to the evidence, because they did not specify wherein the judgment was contrary to the law and to the evidence. Smith v. Hopkins, 120 Fed. 921, 923, 57 C. C. A. 193. This was, no doubt, a proper application of the rule, and this court may properly disregard any consideration of the evidence in determining whether or not the verdict was contrary to law except so far as it must be considered in determining whether or not the motion for a directed verdict should have been granted. In other words the recognized distinction, as shown by Judge Lurton in Mt. Adams, etc., Ry. Co. v. Lowery, 74 Fed. 463, 476, 477, 20 C. C. A. 596, between that amount of evidence which requires a case at its close on such a motion to be submitted to the jury, and that amount of evidence which is sufficient to sustain a verdict, is not of importance here for the reason as shown that with the weight of the evidence an appellate court of the United States has nothing to do. Obviously, then, the alleged errors narrow down to the claim that the motion for a directed verdict ought to have been granted, and the contention that the verdict ought to be set aside because of alleged misconduct of counsel.

[2] That motion required a consideration of the evidence from the standpoint of its tendency to prove the issues, or, as said by Judge Warrington in Big Brushy, etc., Co. v. Williams, 176 Fed. 529, 532, 99 C. C. A. 102, 105:

"The motion must be overruled, where the testimony presented by the plaintiff, if believed by the jury, will support the petition."

Other authorities are to the same effect. Mt. Adams, etc., Ry. Co. v. Lowery, 74 Fed. 463, 476, 477, 20 C. C. A. 596; Central, etc., R. Co. v. Mansfield, 169 Fed. 614, 95 C. C. A. 142; Norfolk & Western Ry. Co. v. Hazelrigg, 170 Fed. 551, 95 C. C. A. 637; L. S. & M. S. Ry. Co. v. Eder, 174 Fed. 944, 98 C. C. A. 556; Noble v. Crane Co., 169 Fed. 55, 94 C. C. A. 423.

The issues were the alleged negligence of defendant in maintaining its rails as they were, and the question of the proximate cause of the accident.

It being agreed that contributory negligence is out of the case, and that the negligent conduct of the engineer and of the brakeman, Garce, in backing the train was not in law chargeable to the defendant, and no point being made in this proceeding that Hollopeter assumed the risk involved in the condition of the rails if there was any, the determination of the issues depends upon whether or not Hollopeter caught his foot as alleged; for, if he was knocked down by the car and then run over, the condition of the rails had nothing to do with the accident, however negligently they may have been maintained. It is clear, too, that, if his foot was not caught, the cause and only cause of his

death was the negligent act of his fellow employés, for which there can be no recovery.

Briefly the respective claims of the parties based upon 'the same facts are: The defendant's, that Hollopeter was knocked down by the Erie car and run over; the plaintiff's, that his foot was caught so he could not escape. Plaintiff must show by a preponderance of the testimony that the foot was caught through the negligent construction of the rails as alleged, and that the catching of the foot was the proximate cause of the accident.

[3] No one saw the foot caught, and defendant complains that the evidence was such as to involve mere conjecture or guessing, or the weighing of probabilities, and could not be made the basis of a verdict. The evidence to go to a jury must, of course, be substantial in character leading‾ logically to a conclusion favorable to the plaintiff. It must be, as said by Judge Severens, "something of substance and relevant consequence, and not vague, uncertain, or irrelevant matter not carrying the quality of 'proof' or having fitness to induce conviction." Minahan v. Grand Trunk, etc., Ry. Co., 138 Fed. 37, 46, 70 C. C. A. 463,·472. In which case he says also:

"It [the Supreme Court] has·by distinct and definite rulings declared that, if there is any substantial evidence bearing upon the issue to which the jury might in the proper exercise of its function give credit. the court cannot rightfully direct the jury to find in opposition to such evidence."

There is a sharp line to be drawn between inferences which would logically follow a given state of facts and which in themselves constitute substantial evidence, and such a state of the evidence, on the other hand, as to give rise to mere conjecture or guessing, or to involve the weighing of probabilities. No man's property should be taken from him on the mere guess that he has committed a wrong imposing a legal liability because of a probability among other probabilities that the accident for which recovery is sought might have happened in the way charged. In speaking for this court Judge Cochran pertinently says:

"But a case should never be left to a jury simply on a question of probabilities with a direction to find in accordance with the greater probability. Probabilities may help out items of evidence from which an inference can be drawn, but cannot take their place. To allow a jury to dispose of a case simply upon a weighing of probabilities is to turn them loose into the field of conjecture, and to have the rights of the parties determined by guess." Virginia, etc., Ry. Co. v. Hawk, 160 Fed. 348, 352, 87 C. C. A. 300. 304.

In Day v. Boston, etc., R. R. Co., 96 Me. 207, 52 Atl. 771, 90 Am. St. Rep. 335, Judge Emery, speaking for the Supreme Court of Maine, puts it this way:

"However confidently one in his own affairs may base his judgment on mere probability as to a past event, when he assumes the burden of establishing such event as a proposition of fact. as a basis for a judgment of a court, he must adduce evidence other than a majority of chances."

Again speaking for this·court, Judge Cochran defines substantial evidence. He says:

"If the evidence favoring such facts of the plaintiff's case is such that reasonable men may fairly differ as to whether it establishes them, then it is substantial. If, however, it is such that all reasonable men must conclude

that it does not establish them, then it is not substantial." Jenkins, etc., Co. v. Alpena, etc.. Co., 147 Fed. 641, 643, 77 C. C. A. 625, 627.

In the absence of direct proof circumstances are always admissible, the strength of the evidence depending upon the conclusiveness of the circumstances, and, when facts are wanting, presumptions are permitted to take their place. It is put this way by the Supreme Court:

"Presumptions are indulged in to supply the place of facts. They are never allowed against ascertained and established facts. When these appear, presumptions disappear." Lincoln v. French, 105 U. S. 614, 617 (26 L. Ed. 1189).

Again:

"But presumptions can stand only whilst they are compatible with the conduct of those to whom it may be sought to apply them; and still more must give place, when in conflict with clear, distinct and convincing proof." Fresh v. Gilson, 41 U. S. (16 Pet.) 326, 330 (10 L. Ed. 982).

The established facts are: A space between the rails sufficiently large to admit the kind of shoe Hollopeter wore. He entered between the cars to open the knuckles of the coupler, an operation requiring a very short time. His left hand was at the corner of the Erie car or on the lever at that corner. The car stood still. There was a space of from four to six feet between it and the next, the Pennsylvania, car. There was some distance between the end of the Erie car and the first wheel that ran over Hollopeter. One witness said: "The trucks you know stand way in under." Similarly there was some distance between the end of the Pennsylvania car and its nearest wheel at that end. The Erie car was moved by the impact of the other cars, but it was going slowly, "very slow" as described by the one eyewitness, Pennell. This witness testified:

"The car did not carry him to the Pennsylvania car." "He was standing still, and the car struck him, and he tried to get out and reached for the next car." "Just as the car did strike him, it looked like he tried to get away." "He reached for the next car." "Apparently just as he stepped in between the cars, the cars were struck, or moved at least, and he fell and the wheels passed over him." "He reached at the time he fell; well, almost the same time the car was struck."

It will be seen from this that the young man was not struck violently and knocked down. He "fell" down. It is a fair inference from the testimony that he was pushed down by the car moving very slowly.

If indeed his foot was free, why could he not have reached the Pennsylvania car? Why could he not have jumped back out of danger between the cars? He is described as active on his feet. If his foot was not held fast, why was there not plenty of time within which to escape the slowly on-coming wheel by utilizing the considerable distance between it and the stationary wheel under the Pennsylvania car?

Many a fair-minded man reasonably endowed with intelligence might say with much conviction from the facts given that the only reason why Hollopeter did not get away was because his foot was caught and he could not. Such inferences do not involve mere probabilities or the balancing of probabilities. They are facts drawn as conclusions based on a man's own experience, his observation, his appreciation of cause and effect, and they involve an explanation of a

result which may satisfy his mind as to the way in which an accident happened as conclusively as if the circumstances had been detailed by an eyewitness.

On the other hand, the defendant's claim is not so satisfactorily explanatory, for the reason, among others, that the catching of the foot under its theory was but an incident to the accident. Under that theory, the man was knocked over, and it so happened that his foot and lower limb were crushed into the aperture between the rails.

The certain facts "established without conflict" which are relied on by defendant as showing conclusively the impossibility of the foot having been caught before the young man was run over are:

"(a) When Hollopeter was struck by the car he was facing *northeast*, towards the Pennsylvania car."

"(b) When Hollopeter was struck by the moving car, he reached out towards the Pennsylvania car, *east of him*, apparently in an effort to hold on to that car, and save himself."

"(c) When Hollopeter's leg and foot were found wedged between the rails, the foot was pointing *west* and the top of the foot and leg were turned upwards."

Defendant lays too much stress upon such testimony as there was on the subject of the relative cardinal positions of the cars, the rails, the foot, and the body after the accident. The accident happened on a sharp curve tending eastwardly and westwardly, but the evidence does not disclose with exactness the relation of the physical facts to the points of the compass. It is not to be supposed that Pennell, testifying long after the accident of what he saw from a point 300 feet away, and with no occasion at the time to fix with particularity the points of the compass, and with nothing but memory to assist him in that respect at the time of testifying, intended to fix absolutely the relative directions of the various movements he saw Hollopeter make. Nor are the facts that the foot was pointing westwardly and the shin was up by any means conclusive. On the contrary, Hollopeter was reaching in to open the knuckle with his right hand, with his left hand at the corner of the car or on the lever. Necessarily in such action he was facing toward the coupling between the cars with the front of his body toward the rear of the Erie car and his foot might well have been caught before the car moved or just at the moment it moved. If that happened, the most natural thing for him to do was to attempt to reach out toward the Pennsylvania car, but in doing that he need not face it, and it does not appear that he did actually face it.

[4] In considering the motion for a directed verdict, the trial judge should not draw conclusive inferences from the proof against the plaintiff in matters which may be subject to reasonable explanation, or exclude from consideration an explanatory hypothesis favorable to the plaintiff and sustained by the evidence. This is the conclusion justly drawn by Judge Sanford in Winters v. B. & O. R. R. Co., 177 Fed. 44, 53, 100 C. C. A. 462, from a consideration of Kane v. Northern Ry. Co., 128 U. S. 91, 95, 9 Sup. Ct. 16, 32 L. Ed. 339, and Mt. Adams, etc., Ry. v. Lowery, 74 Fed. 463, 20 C. C. A. 596.

[5] A case should be submitted to the jury unless it follows as a matter of law that no recovery could be had upon any view which could properly be taken from the facts the evidence tended to estab-

lish. Tex. & Pac. Ry. Co. v. Cox, 145 U. S. 593, 606, 12 Sup. Ct.
905, 36 L. Ed. 829; Dunlap v. R. R. Co., 130 U. S. 649, 652, 9 Sup.
Ct. 647, 32 L. Ed. 1058; Kane v. Northern Central Ry. Co., 128 U.
S. 91, 9 Sup. Ct. 16, 32 L. Ed. 339; Jones v. East Tennessee, etc., R.
R. Co., 128 U. S. 443, 9 Sup. Ct. 118, 32 L. Ed. 478.

[6] It is nowhere better settled than in cases of negligence that,
where uncertainty exists due to conflicting evidence or from infer-
ences to be drawn from established facts, the question is one of fact
to be determined by a jury, and, if the circumstances are such that it
can be said fair-minded men might not agree as to the conclusions to
be drawn, the case must be submitted to the jury. Dunlap v. R. R.
Co., 130 U. S. 649, 9 Sup. Ct. 647, 32 L. Ed. 1058; Washington, etc.,
R. R. Co. v. McDade, 135 U. S. 555, 10 Sup. Ct. 1044, 34 L. Ed. 235;
Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L.
Ed. 485; Tex. & Pac. Ry. Co. v. Cox, 145 U. S. 593, 12 Sup. Ct.
905, 36 L. Ed. 829; Richmond, etc., R. R. Co. v. Powers, 149 U. S.
43, 45, 13 Sup. Ct. 748, 37 L. Ed. 642; Northern Pac. R. R. Co. v.
Egeland, 163 U. S. 93, 16 Sup. Ct. 975, 41 L. Ed. 82; McDermott
v. Severe, 202 U. S. 601, 604, 26 Sup. Ct. 709, 50 L. Ed. 1162;
Steamship Co. v. United States, 205 U. S. 187, 190, 191, 27 Sup. Ct.
480, 51 L. Ed. 764; McGhee v. Campbell, 101 Fed. 937, 42 C. C.
A. 94; Hocking v. Hamilton, 122 Fed. 417, 59 C. C. A. 43; Haynie
v. Tennessee Coal, etc., Co., 175 Fed. 55, 99 C. C. A. 71; Winters
v. B. & O. R. R. Co., 177 Fed. 44, 100 C. C. A. 462.

[7] Defendant's negligence depended upon the jury's conclusion
that Hollopeter's foot was caught before or at the time the car moved
upon him.

When that fact was determined, it was then for the jury to say
whether a reasonably prudent employer exercising ordinary care for
the safety of his employé would permit such a curve to be utilized for
the purpose of frequent switching when it was necessary for the em-
ployé to go between the cars either because of defective couplers, or
because the sharpness of the curve tended to prevent the operation of
the automatic couplers, and would allow a guard rail, distant from
3 to 3½ inches from the rail of the track as the testimony tended to
show, to remain unblocked, into which the foot of an employé might
go by the bending of the sole of his shoe with the weight of its owner
upon it and which could not readily be withdrawn.

If all fair-minded men would answer that question in the affirma-
tive, then the question of negligence should not have been submitted
to the jury. It requires but a statement of the proposition to suggest
its answer. It cannot be said that there would be an agreement. On
the contrary, it is probable that a large majority of fair-minded men
would say that such conduct disclosed a lack of ordinary care on the
part of the employer who had the positive duty to perform of exercis-
ing such care. At any rate, it can be said with some conviction that
not all fair-minded men would reach a conclusion exonerating defend-
ant from the charge of negligence. The duty imperatively devolved
upon the trial judge to submit the question to the jury.

The subject of proximate cause was so plainly put to the jury by

191 F.—50

Judge Knappen in his charge that there could be no escape from a clear understanding of the meaning of that subject, and its particular application to the facts in the case as the jury might determine them to be.

No exception was taken to the definitions and distinctions given and made in the charge. The accident would not have happened unless the car had been negligently moved upon Hollopeter, and there was, on the other hand, evidence tending to show that what cost him his life was his inability to extricate his foot from rails, negligently maintained, in time to avoid the consequence of the moving car. In this respect the case is similar in its facts to Erie Railroad Co. v. White (C. C. A.) 187 Fed. 556, 559, 560, recently decided by this court and quite like it in principle. It is there said that either cause might be considered proximate and the other contributory, according to the view taken by the triers of fact. In this case the jury found that the catching of the foot in the negligently maintained rails was the proximate cause of the accident. Their finding ends the matter.

[8] The subject of misconduct of counsel opens up a wide field of inquiry and discussion into which the necessities of this case do not require an entrance; for the reason that, while opposing counsel objected to the remarks complained of, he asked no ruling of the court as a basis for an exception. Under such circumstances, the matter is not presented to an appellate court in such a way as to require consideration of it. Crumpton v. United States, 138 U. S. 361, 364, 11 Sup. Ct. 355, 34 L. Ed. 958; Allen v. Southern, etc., Ry. Co. (C. C.) 70 Fed. 370, 376; North, etc., Ry. Co. v. Seward, 167 Ill. 618, 621, 47 N. E. 752; Warder, etc., Co. v. Jacobs, 58 Ohio St. 77, 81, 82 83, 50 N. E. 97.

No error appearing, the judgment of the Circuit Court will be affirmed, with costs.